PIERCE–FORDYCE OIL ASS'N v. WARNER DRILLING CO. (No. 8370.)

(Court of Civil Appeals of Texas. Ft. Worth. May 6, 1916.)

1. DAMAGES ☞124(3) — OIL WELLS — CONSTRUCTION OF CONTRACT — DAMAGES FOR BREACH.

Under a written contract between plaintiff and defendant oil association, whereby defendant was to pay plaintiff $1.75 per foot for the drilling of five wells to the depth of 1,000 feet, and to furnish casings, water, and fuel, reserving the right to stop operation on the wells if oil or gas was found in paying quantities at any depth, and, if stopping operations before a depth of 500 feet, to pay for a depth of 500 feet, the plaintiff, after a well drilled to a depth of 1,000 feet had been abandoned and paid for, upon defendant's refusal to permit the drilling of any of the other four wells, was not limited in its action to recover profits which would have been realized by drilling the other wells to the profits on a drilling to a depth of 500 feet each, or 2,000 feet in the aggregate.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 332–334, 337, 338; Dec. Dig. ☞ 124(3).]

2. CONTRACTS ☞147(2)—OBJECT—"CONSTRUCTION."

The term "construction" implies uncertainty as to the meaning of a contract, for, when the meaning is clear and unambiguous, there is nothing to be construed, and, as when the language employed is unequivocal, though the parties may have failed to express their real intention, its legal effect will usually be enforced as written, as no other meaning can be added by implication or intendment.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 730; Dec. Dig. ☞147(2).

For other definitions, see Words and Phrases, First and Second Series, Construction.]

Appeal from District Court, Wichita County; J. W. Akin, Judge.

Action by the Warner Drilling Company against the Pierce-Fordyce Oil Association. Judgment for plaintiff, and defendant appeals. Affirmed.

Huff, Martin & Bullington, of Wichita Falls, for appellant. W. F. Weeks, of Wichita Falls, for appellee.

DUNKLIN, J. The Pierce-Fordyce Oil Association entered into the following contract in writing with the Warner Drilling Company, a partnership:

"This agreement made by and between the Warner Drilling Company, hereinafter called contractor, party of the first part, and the Pierce-Fordyce Oil Association, St. Louis, Mo., hereinafter called the Company, party of the second part, witnesseth:

"I. The Company agrees to pay the party of the first part one and seventy-five one hundredths ($1.75) dollars per foot for the drilling of such wells as designated below to the depth of one thousand feet (1,000), and also agrees to furnish all casings, water and fuel to said wells. The five wells to be drilled in a radius of four miles.

"II. Be it further understood that the Company reserves the right to stop operations on said wells if oil or gas be found in paying quantities at any depth, but, if stopped before a depth of five hundred feet (500) is reached, the Company agrees to pay for a depth of five hundred feet (500).

"III. Well No. 1; Well No. 2; Well No. 3; Well No. 4; Well No. 5.

"IV. It is expressly understood that the foregoing is satisfactory to the party of the first part, and is acknowledged by signature of the same below.

"Wichita Falls, March 18, 1914."

Pursuant to that agreement the Drilling Company drilled one well to a depth of 1,000 feet, which was abandoned because no oil was found. The Oil Association paid the contract price for that work and refused to permit the drilling of any of the other four wells mentioned in the contract. Thereupon the Drilling Company instituted this suit against the Oil Association to recover alleged profits which they claimed they would have realized by drilling the other four wells to the stipulated depth of 1,000 feet had not the defendant breached its contract therefor, and also for the value of their services rendered in withdrawing the casing from the well that was drilled. From a judgment in favor of the plaintiff for $2,625, lost profits by reason of the breach of said contract, and the further sum of $203 as value of services in withdrawing the casing from the well that had been drilled, the defendant has appealed.

[1, 2] The defendant filed the following special plea:

"Defendant, in answer to paragraphs 12, 13, and 14 of the plaintiff's amended petition, says that the written contract was, in fact, the only contract made for the drilling of any well, but that it was reasonably within the contemplation of the parties making said contract and within the meaning of said contract that the defendant should have the right at any time to suspend the drilling of any well or wells therein provided for and in that event should not be required to pay more than $1.75 per foot for each 500 feet of undrilled wells, and in that event would not be responsible to the plaintiff for more than his reasonable profits arising from the drilling of 2,000 feet at the rate of $1.75 per foot; and, while the defendant admits that it has not tendered to plaintiffs any particular sum in settlement of this suit, yet it is now and always has been ready and willing to pay the plaintiffs their reasonable damages in case it should be held by the court that L. S. Kempher had authority to contract for more than one well which has been paid for by the defendant."

The contention so made in that plea that appellant had the right to stop the drilling of any well at a depth of 500 feet, even

though oil was not found therein, and hence was not liable under the contract for profits in excess of what plaintiff could have realized for drilling an aggregate depth of 2,000 feet in the four undrilled wells, is the only contention presented upon this appeal.

There was no plea of fraud, accident, or mistake in the drafting of the contract. Neither was there any evidence tending to show that the parties to the contract understood its meaning to be different from that which its language imports. The evidence does show that the contract was prepared by O. E. Warner, one of the members of plaintiff's partnership firm, and appellant invokes that fact as the reason why the contract should be construed most favorably to it.

The contract is plain and unambiguous, and is not, in our opinion, susceptible of the construction urged in the special answer copied above. Appellant has cited numerous authorities giving the rules of construction of written contracts which are obscure or ambiguous, but same have no application to the contract in the present suit, which is perfectly plain and free of any ambiguity whatever. In 2 Elliott on Contracts, § 1506, the following is said:

"The term 'construction' implies uncertainty as to the meaning of the contract; for, when the meaning is clear and unambiguous, there is nothing to be construed. Moreover, when the language employed is unequivocal, although the parties may have failed to express their real intentions the legal effect of the instrument will usually be enforced as written. Where no uncertainty exists, there is no room for construction. When the meaning is plain, another meaning cannot be added by implication or intendment."

In 6 Ruling Case Law, § 231, p. 841, the following was said:

"Where the language of a contract is ambiguous or susceptible of several significations, conjectures are necessarily resorted to to determine the meaning of the parties; and for this purpose conjectures may be drawn from the subject-matter and from the circumstances of the contract. This rule, however, is applicable only where the language in which the parties have expressed themselves, either from the terms or their arrangement, leaves their intentions doubtful. For otherwise the most usual and natural import is to be given to the instrument or evidence of contract; and to resort to rules of construction would be to substitute probable conjectures for evidence that is direct and unalterable. Accordingly it is said that the agreement of the parties is to be ascertained from the plain language used by them, and such agreement is to be enforced no matter what the intention may have been, and that, where the meaning of a contract is plain, another meaning cannot be added by implication or intendment."

The foregoing announcements, of course, have no reference to the right of a party to a contract to avoid the effect of its literal meaning by showing fraud, accident, or mistake in its execution. As said already, the contract in the present suit is too plain to admit of the construction suggested by appellant, and accordingly appellant's assignment of error to the refusal of the court to peremptorily instruct the jury that plaintiff could not recover profits for drilling in excess of an aggregate of 2,000 feet on the four wells which were undrilled is overruled, and the judgment is affirmed.

Affirmed.