**JAMES STEWART & CO. Inc. et al.**
**v. LAW et al.**
No. 2904.

Court of Civil Appeals of Texas. Waco.
March 9, 1950.

Rehearing Denied April 6, 1950.

Kilgore & Kilgore, Dallas, Lucian Touchstone, Dallas, W. Richard Bernays, Dallas, for appellants.

Carrington, Gowan, Johnson & Walker, Dallas, Lawrence W. Anderson, Dallas, for appellees.

TIREY, Justice.

Appellees brought this suit against James Stewart & Company, Inc., alleging that it had breached its contract with North American Aviation Company in that it had failed to provide the insurance protection to which John S. Law (one of the appellees herein) was entitled as an employee of the North American Aviation Company. Law was hit by a truck operated by Jett Nethery, a sub-contractor, in the performance of the construction work called for in the contract between Stewart and North American and at the time Law was hit and sustained his injuries he was acting within the scope of his employment with North American. The Pacific Indemnity Company, as workmen's compensation carrier of North American, paid Law $3,127.05 because of the injuries he sustained and the Pacific Company and Law, in a suit in tort (not this suit), recovered judgment against Nethery for the sum of $5,000, and the decree of the court awarded $3,127.05 to Pacific Indemnity Company by virtue of subrogation, and the balance was awarded to Law.

Execution was returned nulla bona on this judgment and the Pacific Indemnity Company and Law brought this joint suit in contract against defendant James Stewart, for the purpose of recovering the damages fixed in behalf of Law in the tort suit. James Stewart, by cross-action, sought recovery against Grand Prairie Construction Company, its sub-contractor, for such judgment as rendered against it. Grand Prairie similarly impleaded and sought indemnity from Dye and Shaw, sub-contractors under it, but no complaint is made of the judgment of the court disposing of Dye and Shaw. On trial (nonjury) the court rendered judgment in behalf of the Pacific Indemnity Company for the sum it had paid as compensation carrier and in behalf of plaintiff Law for the sum of $1,872.95 (being the balance of the $5,000 previously awarded in the tort suit against Nethery) and also decreed that James Stewart recover against Grand Prairie the foregoing sums with legal interest and costs. Each of these defendants excepted to the judgment entered and perfected its appeal.

Points 1, 2 and 3 in appellant James Stewart's brief assail the action of the trial court in its failure to sustain certain special exceptions which stated in effect that plaintiffs' petition failed to allege (1) any provision in the contract between defendant James Stewart and the Aviation Company, which placed a duty upon James Stewart to require that sub-contractors carry public liability insurance; (2) the contract under which plaintiffs claim does not give North American a right of action against James Stewart for failure to require sub-contractors to carry liability insurance; and (3) the evidence is insufficient to show that the contract between James Stewart and the Aviation Company was made for plaintiffs' benefit. We overrule each of these contentions.

These points require a comprehensive statement. In March 1942, North American Aviation Company and James Stewart & Co., Inc., entered into a contract providing for the construction by James Stewart of certain structures on the property owned and known as North American

Aviation plant near Grand Prairie in Dallas County. The contract called for the expenditures estimated in excess of $13,000,000. Pertinent to this discussion arts. 11 and 18 of this contract provided in part:

"Art. XI. Insurance. * * * Contractor shall, during the program of the work, maintain (a) Workmen's Compensation Insurance for all of its employees employed at the site of the work, or if such insurance is not required by the laws of the state wherein the work is to be performed, Employers Liability Insurance; (b) Contractor's Public Liability Insurance; and (c) Automobile Liability Insurance.

"The limits of liability provided in each Public Liability Insurance policy shall be $100,000 for injuries, including accidental death, to any one person, and, subject to the same limit for each person, $200,000 for any one accident involving two or more persons. Automobile Liability Insurance shall contain limits of $50,000 and $100,000 and shall also provide a property damage limit of not less than $5,000 covering all owned and rented equipment which is used in or on the work.

"Should all or any part of the contract be sublet, Contractor shall, in addition to the foregoing types of insurance, maintain Contractor's Protective Liability Insurance in an amount not less than $100,000 for injuries, including accidental death to any one person, and, subject to the same limit for each person, not less than $200,000 for any one accident involving two or more persons, except that Contractor's Protective Liability Insurance need not be maintained to the extent that in any cost-plus contract between Contractor and a subcontractor the subcontractor maintains Workmen's Compensation or Employers Liability Insurance and Contractor's Liability Insurance and Automobile Liability Insurance, as above set forth, and provided Contractor is named as an additional insured in such policies of insurance. Certificates of all such insurance shall be filed with Agent or Defense Plant Corporation.

"Article XVIII—Assignment. All covenants and agreements herein contained shall be extended to and be binding upon the successors and assigns of contractor and owner * * *."

Evidence was tendered to the effect that the Pacific Indemnity Company issued to North American Aviation Company a policy of workmen's compensation insurance which became effective on April 27, 1944; that John S. Law was an employee of North American on April 27, 1944, and he received an accidental injury to his right hand and arm on said date, when he was involved in a collision with a truck operated by Jett Nethery, a sub-contractor engaged in the performance of the work in question. The accident occurred on the premises of the Aviation Company and at the time of the accident Law was acting in the course of his employment for the Aviation Company; that Pacific Indemnity Company obligated itself and did pay to Law the sum of $3,127.05 on account of his injuries. Suit in tort was filed by Pacific Indemnity Company and John S. Law against Nethery and all of the other defendants in this cause to recover their damages resulting from the accident to Law. Nethery did not answer. Each of the other defendants filed answers and plaintiffs moved the court to dismiss the cause without prejudice against all of the other defendants therein named save and except Nethery, and this order was granted. (Appellees say in their brief that such parties were held in the tort suit "until the employment status of Nethery was determined and it became known that he did not have automobile liability insurance. They had an opportunity to defend the suit knowing these circumstances but failed and refused so to do.") The court then proceeded to hear evidence on this tort action, which evidence was submitted to a jury, and the jury found that Law had sustained damages by reason of such accident in the sum of $5,000, and the court received the verdict of the jury, and of this sum it awarded $3,127.05 to Pacific Indemnity Company on the theory of subrogation, and the balance was awarded to Law.

The plaintiffs, in their joint petition in this suit, set out substantially the fore-

going facts and in addition thereto specifically alleged the subrogation clause in the compensation policy, which clause provided in part: "The Company shall be subrogated, in case of any payment under this policy, to the extent of such payment, to all rights of recovery therefor vested by law either in this Employer, or in any Employee or his dependents claiming hereunder, against persons, corporations, associations or estates"; that Pacific Indemnity Company became obligated to pay and did pay to John S. Law the sum of $3,127.05 by way of compensation and medical expense by reason of his injuries and disabilities which resulted to Law by virtue of the accident sustained by him in the course of his employment with North American. The petition further alleged that each of the defendants had actual notice of the suit that these plaintiffs filed against Jett Nethery to recover their damages by virtue of the accident sustained by Law, and that they failed and refused to defend the same; that judgment under date of January 10, 1946 was rendered in the amount of $5,000, which was awarded as herein set out; that in due time execution issued on said judgment and was returned unsatisfied.

Paragraph 7 of the plaintiffs' petition alleged: "That the contract which provided that defendant should carry automobile liability insurance and see that the sub-contractors in the performance of the work called for by said contract between plaintiff and defendant did also was made for the benefit of North American Aviation, Inc., and its employees including the said John S. Law, and also for the benefit of Pacific Indemnity Company as assignee of the said North American Aviation, Inc.; that defendant failed to see that Jett Nethery, one of the sub-contractors engaged in the performance of work provided for in the contract between plaintiff and defendant was provided with adequate automobile liability insurance and thereby breached its said contract with North American Aviation, Inc.; that by reason of the aforesaid breach of contract North American Aviation, Inc., through its workmen's compensation insurance carrier, Pacific Indemnity Company, was forced to pay the sum of $3,127.05 to John S. Law and recover the same in its judgment against Jett Nethery; that said judgment has not been satisfied and Pacific Indemnity Company as assignee of all rights of North American Aviation, Inc., is now entitled to recover that sum from James Stewart & Company; that John S. Law on the date and occasion of receiving said injuries was an employee of North American Aviation, Inc., and was working for them and at their plant within the scope of his employment when he was injured; that by reason of the defendant's breach of said contract as aforesaid John S. Law has been damaged in the amount of $1872.95."

We think that appellees' petition alleged with certainty (a) that the contract between North American Aviation Company and James Stewart required James Stewart to carry automobile liability insurance containing designated limits for the benefit of North American and its employees; (b) that such contract imposed the further duty on James Stewart to see that the sub-contractors in the performance of such work which was called for by said sub-contracts also carried automobile liability insurance; (c) that James Stewart failed to see that Nethery, one of the sub-contractors engaged in the performance of the work provided for in the contract between North American and James Stewart, was provided with adequate automobile liability insurance; (d) that Law, an employee of North American, sustained injuries within the scope of his employment, when he was hit by a truck operated by Nethery in the performance of construction work called for in the contract between James Stewart and North American; (e) that the provisions in the original contract binding James Stewart to carry automobile liability insurance and also to see that the sub-contractors, in the performance of the work, carried such insurance, were made for the benefit of North American and its employees, including Law, and were for the benefit of Pacific Indemnity Company as assignee of North American; and (f) that Law and Pacific Indemnity Company did recover judgment against Nethery

for $5,000, on which judgment execution was returned nulla bona.

We have no difficulty in reaching the conclusion that the plaintiffs' pleadings stated a cause of action against James Stewart and that the trial court did not err in overruling the special exceptions attacking the sufficiency of the petition. The allegations are concise and comprehensive and they give to the defendants fair notice of the claim which they seek to establish. See Rules 45 and 47, Texas Rules of Civil Procedure.

As we view the issue presented by the pleadings in this cause, there is no contention as to the contractual requirement for automobile liability and public liability insurance. The defendants' pleading presents the legal question that appellee Law could not be a third party beneficiary under the express provisions of the contract for insurance protection.

The whole of the contract between North American and James Stewart was introduced in evidence and we think the above issue was raised by the pleadings and tried by the court. Rule 67, T.R.C.P. So, the controlling question here to be decided is as to the legal effect of the contract between North American and Stewart, and whether appellee Law could be a third party beneficiary under its provisions.

■ In Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003, 1006, we find this statement: "It is the law of this State that a person not a party to the contract may enforce it if it appears that it was made for his benefit." Citing 10 Tex.Jur. 478, sec. 278; 12 Amer.Jur. 833, sec. 281; 17 C.J.S. Contracts, § 519, p. 1121. 12 Amer.Jur. sec. 277, p. 825, holds in effect that a person may enforce it even though he is a stranger both to the contract and to the consideration. 10 Tex.Jur. 484 holds in effect that it is not necessary that the third party beneficiary be named in the contract, nor that the particular person to be benefited be known when the contract was made. We think this is the exact factual situation in the case at bar. Moreover, whether the third party beneficiary is or is not an incidental beneficiary generally will depend on the intention of the parties. This intention can be drawn only from the terms of the contract and circumstances. As the trial court rendered judgment for both appellees, it must have found that, by reason of Law's relationship to one of the parties to the contract, he was not merely an incidental beneficiary but an actual and intended beneficiary and thus entitled to recover for the breach of this contract. When we read the contract, and particularly that part of art. 11 dealing with insurance, we have no difficulty in reaching the above conclusion. Since this trial was non-jury and no findings of fact and conclusions of law were requested and none filed, every reasonable presumption, consistent with the record, will be indulged in favor of the findings and judgment of the trial court. 3-B Tex.Jur. p. 378. See also Sabinal Independent School Dist. v. County Board of School Trustees of Uvalde Co., Tex.Civ.App., 211 S.W. 331, 332. See also Rule 299, T.R.C.P.; Loggins v. Stewart, Tex.Civ.App., 218 S.W.2d 1011 (writ ref.) and authorities collated under West's Digest System, Appeal & Error, ☞ 864(2) and (5).

■ Since Law was an employee of North American and was injured on the premises while working in the scope of his employment, we think it is only reasonable to infer that North American, in the making of the contract with Stewart, desired and intended that its employees would be properly protected against trucks and automobiles being driven on the premises of its plant. As stated, the construction work being done on the premises was extensive, and we think the inference is clear from the terms of the contract that it was in the contemplation of North American and James Stewart that many injuries arising from such work might result; otherwise, there would have been no need for the contract to have been so carefully drawn and to have provided that such protection was to be carried by each and every subcontractor doing work on this job. Then too, North American was acting for and on behalf of Defense Plant Corporation, a government corporation. Surely the

United States Government and its defense agencies, as a matter of public policy, had the intent of making whole all laborers that were injured in connection with the war projects, and it is clear to us that such was the purpose of the contract between North American and James Stewart. Appellee Law was an employee of North American, one of the contracting parties, and he was one of the objects of its protection. We have no difficulty in seeing why the trial court determined as a matter of law that Law was not an incidental beneficiary to the contract but was an intended beneficiary and as such was entitled to recover for breach thereof. "The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of circumstances under which it was made. 6 RCL 887." See 81 A.L.R. p. 1271, p. 1287, also p. 1288. We see no conflict in the views here expressed with the holding of our Supreme Court in Knox v. Ball, 144 Tex. 402, 191 S.W.2d 17, 164 A.L.R. 1453; and Standard Acc. Ins. Co. v. Knox, 144 Tex. 296, 184 S.W.2d 612.

In the case of Mosher Mfg. Co. v. Equitable Surety Co., Tex.Com.App., 229 S.W. 318, 320, opinion adopted by S.Ct. we find this statement: "But, independent of any statute, a municipality which has the power to contract for the construction of public building has the implied authority to bind the contractors to pay the claims of materialmen and laborers, although such contract is for their benefit. (Citing cases.) The object of such agreements is the same as the object secured by lien statutes to private parties. They are justified upon the theory that they protect the public interests by securing responsible dealers and better material than under the greater uncertainty incident to transactions dependent upon the personal responsibility of contractors, and *because they protect the persons whose property and labor have been applied to public uses* (Citing cases.)" Our Supreme Court has not departed from this doctrine. We think the broad rule there announced is analogous and applicable to the situation here insofar as North American was undertaking to protect the laborer on this job on a two-fold basis: (1) that the laborer would be protected through compensation insurance for his loss of time due to injuries received while engaged in the furtherance of his master's business; (2) that he would be further protected by means of liability insurance in the event he was accidentally injured while on the job acting within the scope of his employment. James Stewart in his brief says: "It does not require a careful examination of the provisions of the contract to see that the contract does not purport to create any obligation on the part of Stewart to require sub-contractors to carry any insurance." We do not share this view. In 12 Amer.Jur. 832, sec. 280, we find this rule: " * * * if the terms of the contract necessarily require the promissor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person; and this should be sufficient to enable the latter to enforce the contract, although it also works to the advantage of the immediate parties thereto and although the actual purpose motivating the parties in making the provision in question was the purely selfish one of benefiting and protecting themselves rather than of benefiting the third person." See also 81 A.L.R. 1287, 1288. James Stewart recognized each of the above purposes and the foregoing rule, and its corresponding responsibility is expressly shown by its contract with Grand Prairie Construction Company. The contract between Stewart and Grand Prairie with reference to this matter provided:

"The Sub-Contractor shall be responsible for injuries to or death of all persons whether employed by the Sub-Contractor or otherwise, or to the public, or for damage to any property whether belonging to the Sub-Contractor or to others, arising from acts of the Sub-Contractor or its employees during the progress of the work, against all which injuries and damage to persons and property the Sub-Contractor must properly guard and make good all such damage from whatever cause.

"In addition to the liability of the Sub-Contractor for personal injuries or death, as hereinbefore set forth, and in the nature

of collateral protection to the contractor, the Sub-Contractor shall take out, maintain and pay for Public Liability Insurance, and if any part of this sub-contract is sublet, Contractors Protective Liability Insurance in $100/200,000 limits and Employers Liability or Workmen's Compensation Insurance through Agents and in companies to be designated by the Contractor, covering the public and all workmen engaged upon its work, such policies being in favor of the Sub-Contractor to protect it against loss arising from injuries or death to persons, and this shall apply to any and all sub-contractors of the Sub-Contractor, and the Sub-Contractor shall furnish to the Contractors certificates of such insurance before the work is started. It is expressly understood and agreed that the Contractor's designation of the insurance company and the limits of Public Liability Insurance above mentioned shall not release the Sub-Contractor from its obligation to indemnify and save the Contractor harmless from all expense in connection with any and all claims that may arise as a result of its employment on this work. In the event of suit being brought against the Contractor, or Owner, for any claim growing out of the above causes, the Sub-Contractor shall pay all expenses of such litigation as soon and as often as incurred, and in the event of judgment being entered against the Defendant in any such action, the Sub-Contractor shall, immediately after the entry thereof, pay to the defendant the amount of such judgment. If automobiles are used, certificate shall include Automobile Liability Insurance with limits of $50/100,000 and Property Damage limit of not less than $5000."

■ The original contract placed the express duty on James Stewart to see that such protection was provided for such laborers employed by each and every one of its sub-contractors doing work on this job. This law suit arises out of the failure of James Stewart to require one of its sub-contractors to comply with the provisions in the contract to carry the automobile and public liability insurance expressly provided for in the original contract. It

seems to us that the legal point simply stated is: Can the original contractor take advantage of his failure to perform the express terms of his contract? Our view of Stewart's position here in effect is that he knew it was his duty to see that such contractors complied with such provisions, but because he failed to do so, one cannot take advantage of his breach because such one was not within the contemplation of the contract when it was executed. Such view is in irreconcilable conflict with the purpose and intention of the parties to the original contract, as well as Stewart's contract with Grand Prairie, and places a strained construction on the purpose and intention of the parties. We do not share such view. We think it is well settled in Texas that one cannot plead his failure to perform a contract as a release from his obligation so to do.

From what we have said it necessarily follows that Grand Prairie's point 1 to the effect that plaintiffs had no rights under the original contract between North American and James Stewart, and its point 2 that the evidence was insufficient to support the judgment on any theory, and its point 3 to the effect that there was no pleading or proof of any assignment by North American to Pacific Indemnity Company of any loss, nor was there any evidence of the violation by James Stewart of any rights of North American, and its point 4 to the effect that there was no evidence, and, in the alternative, the evidence was insufficient to establish any damages to plaintiffs by reason of the alleged breach of the contract, are without merit and are overruled.

■■ Perhaps we should say here that appellee's damages having been fixed in the tort suit in a court of competent jurisdiction and no appeal having been taken to such judgment and no issue as to the amount of the judgment having been raised in this suit in the court below, appellants cannot raise it for the first time on appeal. Moreover, such judgment is not subject to collateral attack. "It is the rule that when parties have had the opportunity of litigating certain issues and a final judg-

608

ment is entered in the cause, adjudicating these issues, it is not the policy of the law to permit a re-litigation of such questions." See Stevenson v. Wilson, Tex.Civ.App., 163 S.W.2d 1063, points 2-3, p. 1065, and authorities there cited.

In this connection we think it is pertinent to observe that our workmen's compensation statutes were not designed to make whole the laborer from accidental injuries received by him while he was acting within the scope of his employment, and they do not do so. We think that the original contractors recognized the foregoing limitations of our workmen's compensation law and that such limitations were within the contemplation of the parties at the time they entered into the original contract requiring Stewart and his assignees under the contract to provide the public liability insurance protection and that it was done for the benefit of Law and any other laborers who occupied a similar status. Since the original contract required James Stewart to maintain automobile liability insurance in the performance of the work, such insurance protection, if carried, would have inured to the benefit of Law and he would have been adequately protected whether the truck owner or operator was able to respond in damages or not, and we think such was the purpose of such provision in the contract; otherwise, they would have been meaningless.

Grand Prairie's fifth point is to the effect that there was no evidence, and, in the alternative, the evidence was insufficient to establish any right on the part of James Stewart to indemnity from Grand Prairie and that the trial court erred in rendering judgment over in favor of James Stewart against Grand Prairie. We overrule this contention.

The applicable provision in the contract between Stewart and Grand Prairie has been quoted and such provision is clear, unambiguous and controlling, and our view is that it answers adversely Grand Prairie's contention. This provision is so clear and comprehensive that further comment thereon would be of no avail.

Finding no reversible error in the judgment of the trial court, it is in all things affirmed.