JAMES STEWART & COMPANY, INCORPORATED, ET AL. V.
JOHN S. LAW ET AL.

No. A-2693. Decided October 25, 1950.
Rehearing overruled November 29, 1950.
(233 S. W., 2d Series, 558.)

*Kilgore & Kilgore,* for James Stewart & Co.; *Lucian Touch-*

*stone* and *W. Richard Bernays,* all of Dallas, for Grand Prairie Const. Co., petitioners.

It was error for the Court of Civil Appeals to hold that the contract sued upon between James Stewart and Defense Plant Corporation acting through its agent North American Aviation Co., contained a provision requiring James Stewart to see that all subcontractors carried automobile liability insurance when performing work called for by the contract. Thurber Const. Co. v. Kemplin, 81 S. W. 2d 103; Republic Supply Co. v. Allen, 262 S. W. 113; Spencer v. Wyandotte Const. Co., 273 Mo. 605, 201 S. W. 554.

*Lawrence W. Anderson,* for John S. Law, *Carrington, Gowan, Johnson & Walker,* and *Lawrence Jones,* all of Dallas, for Pacific Indemnity Co., respondents.

Not having raised the question in the trial court that the contract obligated James Stewart to see that the subcontractors in the performance of the work carried automobile liability insurance, it is too late to raise such question in the appellate court. Upham v. Ladd, 128 Texas 14, 95 S. W. 2d 365; Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S. W. 73; Collins v. Hall, 141 Texas 433.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

North American Aviation Company acting for and on behalf of Defense Plant Corporation entered into a construction contract with James Stewart & Company, Inc., which latter company thereafter entered into a subcontract with Grand Prairie Construction Company covering a portion of the construction work. Grand Prairie then entered into a subcontract with Dye and Shaw, who in turn contracted with Jett Nethery, a truck owner, for the hauling of gravel in connection with the performance of his subcontract. While hauling gravel under his contract, Nethery's truck ran into and injured John S. Law, an employee of North American. At the time he received his injuries Law was in the performance of his duties as an employee of North American, and Pacific Indemnity Company, compensation insurance carrier for North American, paid Law $3,127.05 as workmen's compensation insurance. Thereafter, Pacific Indemnity and Law sued Nethery, Dye and Shaw, Grand Prairie, and Stewart & Company for damages for the personal injuries sustained by Law. Pacific Indemnity's claim was based upon its right of subrogation in the amount paid Law as workmen's com-

pensation. R. S. Art. 8307, sec. 6a. All of the defendants answered except Nethery, whereupon the plaintiffs took a nonsuit as against all defendants except Nethery and were awarded a judgment by default against him in the sum of $5,000.00, Pacific Indemnity Company being awarded judgment in the sum of $3,127.05 and Law being awarded judgment for the balance. Execution against Nethery was returned nulla bona. Pacific Indemnity Company and John S. Law then brought this suit for $5,000.00 against James Stewart & Company, Inc., which company impleaded Grand Prairie Construction Company, seeking indemnity under its subcontract with Grand Prairie, and Grand Prairie impleaded Dye and Shaw and sought indemnity by virtue of its contract with them. On the trial before the court without a jury judgment was rendered in favor of Pacific Indemnity and Law as prayed for against Stewart & Company, with judgment over in favor of Stewart & Company against Grand Prairie. Grand Prairie was denied recovery against Dye and Shaw, but no complaint is made of that portion of the judgment and it will, therefore, receive no further notice. On appeal the trial court's judgment was affirmed by the Court of Civil Appeals. 228 S. W. 2d 601.

The theory upon which this suit was prosecuted and judgment rendered is that the contract between North American and Stewart & Company obligated the latter to see that all subcontractors carried automobile liability insurance, and that, since it failed to require subcontractor Nethery to carry any insurance, and Nethery did not in fact carry any insurance, Stewart & Company was liable to plaintiffs in the respective amounts claimed by them, on the theory of breach by Stewart & Company of its contract with North American under which Law was a third party beneficiary. That theory has been sustained by both courts below.

Respondents argue that petitioners did not make an issue in the trial court of respondents' allegation that Stewart & Company was obligated by its contract with North American to see that subcontractors carry automobile liability insurance, and are not, therefore, entitled to have the question considered by the appellate courts. The record lends some support to that claim, but, since in our view it does not clearly establish it, we resolve the doubt in favor of the right of petitioners to have the question decided on appeal.

The contract between North American and Stewart & Company contained, among others, these provisions:

"Contractor shall, during the progress of the work, maintain (a) Workmen's Compensation Insurance for all of its employees employed at the site of the work, or if such insurance is not required by the laws of the state wherein the work is to be performed, Employer's Liability Insurance; (b) Contractor's Public Liability Insurance; and (c) Automobile Liability Insurance.

"The limits of liability provided in each Public Liability Insurance policy shall be $100,000 for injuries, including accidental death, to any one person, and subject, to the same limit for each person, $200,000 for any one accident involving two or more persons. Automobile Liability Insurance shall contain limits of $50,000 and $100,000 and shall also provide a property damage limit of not less than $5,000 covering all owned and rented equipment which is used in or on the work.

"Should all or any part of the contract be sublet, Contractor shall, in addition to the foregoing types of insurance, maintain Contractor's Protective Liability Insurance in an amount not less than $100,000 for injuries, including accidental death to any one person, and, subject to the same limit for each person, not less than $200,000 for any one accident involving two or more persons; except that Contractor's Protective Liability Insurance need not be maintained to the extent that in any cost-plus contract between contractor and a subcontractor the subcontractor maintains Workmen's Compensation or Employers' Liability Insurance and Contractor's Public Liability Insurance and Automobile Liability Insurance, as above set forth, and provided Contractor is named as an additional insured in such policies of insurance. Certificates of all such insurance shall be filed with Agent of Defense Plant Corporation."

The applications for writs of error filed by Stewart & Company and Grand Prairie were granted because of our tentative view that by the provisions of the contract just quoted Stewart & Company did not obligate itself to see that subcontractors carry public liability or automobile liability insurance. A more careful consideration of the record since the case was submitted and argued than we were able to give it in passing on the applications for writs of error leaves us in doubt as to the meaning of those involved provisions. Of one thing we feel certain, and that is that the language is ambiguous. Because of its ambiguity we have resorted to the record as a whole to determine just what the parties intended by the language employed. That record affords us a satisfactory guide.

The contract between North American and Stewart & Com-

pany called for an expenditure in excess of thirteen million dollars. It contemplated that all or parts of the contract would be sublet. It reflected that North American was greatly concerned about the continued solvency of the contractor and subcontractors. One obvious reason for its concern was to afford it protection from suits which might be filed against it on account of the default or negligence of contractor or some subcontractor. That protection could be afforded by various types of insurance. The record discloses that beyond a doubt Stewart & Company interpreted the contract to impose upon it the duty to require of its subcontractors the maintenance of automobile liability insurance, and acted upon that interpretation. In its contract with Grand Prairie subletting a portion of its contract are these provisions:

"In addition to the liability of Sub-Contractor for personal injuries or death, as hereinbefore set forth, and in the nature of collateral protection to the Contractor, the Sub-Contractor shall take out, maintain and pay for Public Liability insurance, and, if any part of this sub-contract is sublet, Contractors Protective Liability insurance in $100/200,000 limits and Employers' Liability or Workmen's Compensation insurance through Agents and in companies to be designated by the Contractor, covering the public and all workmen engaged upon its work, such policies being in favor of the Sub-Contractor to protect it against loss arising from injuries or death to persons, and this shall apply to any and all sub-contractors of the Sub-Contractor, and the Sub-Contractor shall furnish to the Contractors certificates of such insurance before the work is started."

In its answer to plaintiffs' petition filed in the trial court in this case following a general denial and a special denial that plaintiffs were beneficiaries under its contract with North American, Stewart & Company impleaded Grand Prairie, seeking indemnity against it from any judgment that might be rendered in favor of plaintiffs, and in that pleading alleged:

"On or about March 24, 1942, NORTH AMERICAN AVIATION, INC., a corporation of Delaware, acting for and on behalf of DEFENSE PLANT CORPORATION, a corporation created by Reconstruction Finance Corporation pursuant to Section 5(d) of the Reconstruction Finance Corporation Act as amended, entered into a contract with James Stewart & Co., Inc., for the erection and building of certain structures and buildings at Grand Prairie, Texas, which contract provided for the maintenance of certain insurance by contractors and provided that in case any part of the contract was sublet by the

contractor, the contractor should acquire of its subcontractor the maintenance by the subcontractor of Workmen's Compensation or Employers' Liability insurance and Contractors' Liability insurance and Automobile Liability insurance, naming contractor as an additional insured in such policies and that certificates of such insurance should be filed with the agent of Defense Plant Corporation."

■ Since that pleading followed a general denial of respondents' allegations and was contained in the pleading of Stewart & Company against Grand Prairie for indemnity, we do not regard it as an admission by its pleadings of liability to respondents, but we do regard it as an interpretation by Stewart & Company of the terms of its contract with North American. No principle of interpretation of contracts is more firmly established than that great, if not controlling, weight should be given by the courts to the interpretation placed upon a contract of uncertain meaning by the parties themselves. Courts rightfully assume that parties to a contract are in the best position to know what was intended by the language employed. Lone Star Gas Co. v. X-Ray Gas Co., 139 Texas 546, 164 S. W. 2d 504; 12 Am. Jur., Contracts, sec. 249; 10 Tex. Jur., Contracts, sec. 171. In the application of that principle Stewart & Company by its own interpretation of its contract with North American has breached it in the respect under review, and the courts below did not err in so decreeing.

■■ Petitioners appear to place their principal emphasis upon the proposition that Law and Pacific Indemnity are not third party beneficiaries under the contract between North American and Stewart & Company. They invoke the principle that parties are presumed to contract for their own benefit and not that of another. In the application of that principle to the contract before us they take the position that the intent of the parties in requiring automobile liability insurance of contractors and subcontractors was to protect the owner by safeguarding the solvency of the contractor and subcontractors so that they could perform their contracts. If it be assumed that the motive of North American was only the selfish one to protect itself and not that of benefiting third parties, it does not follow that it did not intend to benefit third parties. Motive and intent are not synonymous. In United Fidelity Life Insurance Co. v. Adair, 29 S. W. 2d 940, affirmed 29 S. W. 2d 944, the opinion quotes with approval this language clearly pointing out the distinction between motive and intent:

"Intent, in its legal sense, is quite distinct from motive. It is defined as the purpose to use a particular means to effect a certain result. Motive is the reason which leads the mind to desire that result."

The means employed by the contracting parties to effect the result which they had in mind was to require that the contractor and subcontractors maintain various types of insurance. The law presumes that the parties to a contract intend the consequences of its performance. The intent of the requirement that the contractor should see that all subcontractors carry automobile liability insurance was necessarily to provide a method by which claims of liability of the type insured against could be paid by insurers. Respondents' claim is of that type. Had petitioners required the subcontractor to procure a policy of liability insurance, Law would have benefited thereby, and Pacific Indemnity would have been subrogated in part to Law's rights. North American and Stewart & Company must be presumed to have intended that that consequence flow from the performance of their contract. It follows that, in our view, respondents were entitled to maintain this suit on the contract. This question is discussed and many cases dealing with it are cited in an annotation in 81 A. L. R., pages 1271-1308. See also Williston on Contracts, Vol. 2, Sec. 357.

We agree with the holding of the Court of Civil Appeals that by the plain terms of the contract between Stewart & Company and Grand Prairie, copied in that court's opinion, the former was given the right of indemnity against the latter.

The case is affirmed.

Opinion delivered Oct. 25, 1950.

MR. JUSTICE CALVERT, joined by Justices Hart and Garwood, dissenting.

I cannot agree with the majority opinion in this case.

The contract in question is a contract between North American Aviation Company and James Stewart & Company. Law was not a party to the contract. If he and the subrogated insurer have any legal rights under it, those rights must arise because the contract was made for Law's benefit; the contract must impose some obligation on Stewart & Company, the fulfillment of which would redound to Law's benefit. By what provision of this contract is there any such obligation imposed?

The contention of respondents is that the contract imposed on Stewart & Company an obligation to require its subcontractor, Grand Prairie, Grand Prairie's subcontractor, Dye and Shaw, and Dye and Shaw's subcontractor, Nethery, to carry the types of insurance therein mentioned for the benefit of their respective employees and for the benefit of the public. It stands admitted that Stewart & Company did not require Nethery to obtain such protective insurance; and it is this breach of its contractual obligation, contends Law and the subrogated insurer, that gives rise to Law's right of action as a third party beneficiary, against Stewart & Company. If it be conceded that the breach of a contract imposing a duty to require some one else to make a contract for the benefit of a third party is actionable at the instant of such remote third party, yet I cannot agree that the contract in question, properly interpreted, imposes any such obligation on Stewart & Company.

By their opinion the majority of this Court as much as confess that no obligation for the benefit of third parties, situated as was Law, is imposed on Stewart & Company by the *express* terms of the contract. But, it is said, the contract is involved and ambiguous and we may look to the factual background, the surrounding facts and circumstances and the interpretation placed on the contract by the parties to resolve the ambiguity and ascertain the intent of the parties. That this is a proper rule for interpreting ambiguous contracts is not here questioned. It may be admitted also that the language of the contract is somewhat "involved", but is there any ambiguity in any of the terms of the contract whereunder Law may claim any legal rights as a third party beneficiary? I think not.

While it is axiomatic that in the interpretation of contracts the courts will seek out and give effect to the intention of the parties, it is nevertheless well settled that "where the terms of a writing are plain and unambiguous, there is no room for construction, since the only office of judicial construction is to remove doubt and uncertainty." 12 Amer. Jur. 752, Contracts, sec. 229. If the language and terms of the contract are clear and plain the courts will seek no further to discover an intent at variance with that expressed in the contract itself. 17 C. J. S. 695, Contracts, sec. 296; Pierce-Fordyce Oil Ass'n. v. Warner Drilling Co., 187 S. W. 516 (Tex. Civ. App., 1916) ; Magnolia Petroleum Co. v. Connellee, et al., 11 S. W. (2d) 158 (Comm. App.). The rule seems to be well established that parties are presumed to contract for their own benefit and that one not a party to the contract will not be permitted to claim thereunder

unless it clearly appears that the parties to the contract intended it to be for his benefit. Citizens National Bank v. Texas & P. Ry. Co., et al., 136 Texas 333, 150 S. W. (2d) 1003; Knox v. Ball, et al., 144 Texas 402, 191 S. W. (2d) 17; 12 Amer. Jur. 832, Contracts, sec. 280; 17 C. J. S. 1220, Contracts, sec. 582.

A careful reading of the contract here involved discloses no language whatever indicating that it was the intention of the parties that Stewart & Company should be burdened with the obligation of requiring subcontractors of subcontractors of subcontractors to carry protective insurance. The language of the first paragraph of the contract as quoted in the majority opinion required Stewart & Company to maintain the types of insurance there described for its own protection, for the benefit of its employees, and for the benefit of such third parties as might have claims against Stewart & Company because of its torts or the torts of its employees. The second paragraph fixed limitations on the amount of insurance required under the first paragraph. The first clause of the third paragraph provided that Stewart & Company should maintain Contractors' Protective Liability Insurance in fixed amounts in the event it sublet all or any part of the contract. The last clause of the third paragraph relieved Stewart & Company of the obligation imposed in the first clause thereof to the extent that any subcontracor on a cost-plus basis maintained the types of insurance there mentioned with Stewart & Company named in the policies as an additional insured. This, it seems to me, is the clear meaning of the contract with the intention of the parties manifest in its terms. There is no suggestion of an obligation imposed on Stewart & Company to require subcontractors to maintain the types of insurance mentioned in the last clause of the third paragraph of the contract. There is no such ambiguity as justifies the court in seeking the intention of the parties in the facts and circumstances surrounding the making of the contract or in the acts of the parties which otherwise might be looked to in order to ascertain their interpretation of the contract. These matters become wholly immaterial. For that matter, I do not agree that the contractual requirement for protective insurance made of Grand Prairie and its subcontractors by James Stewart & Company necessarily supports the majority view that this was a recognition by James Stewart & Company of an obligation to require it. It seems more consistent with the plain provisions of the contract with North American to hold that by making the requirement of Grand Prairie and its subcontractors James Stewart & Company simply availed itself of its right to obtain relief from the obligation of having to maintain the insurance

provided for in the first clause of the third paragraph of the North American contract.

Believing as I do that there is no sound basis for holding that the contract imposed on Stewart & Company an obligation to require Nethery to carry Automobile Liability Insurance it follows that it is my opinion that the judgments of the Court of Civil Appeals and the trial court should be reversed and judgment here rendered for the Petitioners.

Opinions delivered October 25, 1950.

Motion for rehearing overruled November 29, 1950.