[Civ. No. 22542.   Second Dist., Div. Three.   May 9, 1958.]

WILLIE MAE JOHNSON et al., Respondents, v. HOLMES TUTTLE LINCOLN-MERCURY, INC. (a Corporation), Appellant.

Getz, Aikens & Manning, Thomas C. Murphy and DeWitt Morgan Manning for Appellant.

A. J. Blackman for Respondents.

VALLÉE, J.—Appeal from a judgment for plaintiffs as third party beneficiaries of an oral agreement to procure public liability and property damage insurance.

The agreement is alleged to have been entered into between Holmes Tuttle Lincoln-Mercury, Inc., called defendant, and Phillip R. Caldera and his wife, Ruth, in connection with the purchase by the Calderas of a new Mercury automobile from defendant on November 23, 1953.

On December 11, 1953, about three weeks after the Calderas purchased the car, Phillip Caldera was involved in an accident with the Mercury. Plaintiffs, Willie Mae Johnson and Fletcher Jones, a passenger, were injured and Johnson's car was damaged.

Separate actions were filed by plaintiffs against Phillip Caldera. Judgments were entered May 23, 1955, in favor of plaintiff Johnson for $4,413.89, and in favor of plaintiff Jones for $2,070. These judgments remain unsatisfied.

Plaintiffs allege defendant, by its salesman Harry Rozany, had agreed with Caldera at the time the Mercury was purchased to procure "full coverage" insurance for Caldera, including public liability and property damage, for the operation of the Mercury; both Caldera and defendant understood the insurance was to be obtained for the usual term and for no less than the minimum legal limits; defendant failed to obtain the public liability and property damage insurance after Caldera had performed all of the terms of the agreement on his part. The prayer is for the amounts of the judgments obtained against Caldera with interest. In a jury trial the verdict was for plaintiffs as prayed. Defendant appeals from the judgment which followed.

On November 23, 1953, Caldera appeared with his wife, Ruth, at the showroom of defendant for the purpose of pur-

chasing a new Mercury. One of defendant's salesmen, Harry Rozany, approached the Calderas and discussed with them the prospective purchase of a new Mercury like the one then in the showroom. After about five minutes Rozany took them to a "closing room" where terms were discussed for about an hour and the purchase consummated. The Calderas told Rozany they had a 1948 Chevrolet as a trade-in and $900 cash as a down payment. They indicated they could not afford to make payments of over $80 a month on the balance. During the discussion Caldera told Rozany he wanted "full coverage insurance," and Rozany replied, "Oh, yes, you are getting it." Rozany made out the papers and sold them "another insurance," a policy by which the insurer engaged to pay the balance of the purchase price of the car in the event of the death or disability of Caldera. The premium of $2.50 to $3.00 a month was to be included in the installment payments. Rozany computed the figures in the transaction on "scratch paper." He had Caldera sign the car order and the conditional sale contract in blank. Rozany took the papers "upstairs," saying he was going to complete filling them out.

About December 2, 1953, Mrs. Caldera received by mail a copy of the conditional sale contract dated December 1, 1953, which showed fire, theft, comprehensive, and $50 deductible collision insurance thereon, but which made no reference to public liability and property damage insurance. Mrs. Caldera read only the figures. She called defendant to talk to Rozany but as he was not there she did not talk to him or to anyone. Caldera did not see this copy of the conditional sale contract received by Mrs. Caldera. Neither of the Calderas saw the original sales order until after the first of the year when Caldera went to put in the new certificate of registration and discovered the folded document with the stamped notation "No liability insurance sold on this car," which had been placed in the registration holster and fastened on the wheel by Rozany shortly after he had returned to the closing room with the approved order at the time of the purchase. Caldera first learned he had no public liability and property damage insurance after his wife went to the office of Olympic Insurance Company "to find out about the insurance." That company had issued the collision policy dated December 15, 1953, which the Calderas received December 17, 1953, four days after the accident.

To Caldera, who was 36 years old, employed as a mechanic, and who had been through the ninth grade in school, "full

coverage insurance'' meant everything that is supposed to be in insurance, including public liability and property damage. The public liability and property damage insurance on the 1948 Chevrolet automobile used as a trade-in had expired in August of 1953, and Caldera testified that since it was an old car and they intended trading it in on a new one any day he thought there was no use in renewing it.

Defendant had a licensed insurance department. Its salesman, Rozany, had been a new car salesman there about three years, during which time he had sold about 300 cars, and on at least one occasion the sale involved the purchase of public liability and property damage insurance. Rozany's experience as a new car salesman was continuous from 1937.

Plaintiffs' expert witness, James P. Bennett, an experienced insurance salesman, testified over objection of defendant that the term ''full coverage'' when used by a layman meant in the automobile insurance business insurance against damage to his car and against damage caused by his car; it would include a term of one year, basic limits of $5,000 for injuries to one person, $10,000 for injuries to all persons in one accident, and $5,000 for property damage, as well as $500 medical payments.[1] The premium for such insurance by one using his car to travel to and from work in the particular territory in which Caldera drove would be $63. He also testified there was sufficient information on the purchaser's statement which was signed by Caldera to order the coverage, so long as he had the sales order to identify the car.

Defendant first asserts the evidence does not support the implied finding of the jury that there was a contract to procure public liability and property damage insurance between Caldera and defendant; nor does the evidence support the implied finding that plaintiffs were third party beneficiaries of a contract between Caldera and defendant. It is argued there was no consideration paid by Caldera for defendant's agreement to procure full coverage insurance, including public liability and property damage. The agreement alleged and proved was that in consideration of Caldera's purchasing the Mercury defendant would procure full coverage insurance, including public liability and property damage.

Mutual promises constitute consideration. (Civ. Code, § 1605; *El Rio Oils* v. *Pacific Coast Asphalt Co.*, 95 Cal.App. 2d 186, 193 [213 P.2d 1]; 12 Cal.Jur.2d 498, § 266; Rest.,

[1]Vehicle Code, section 415.

Contracts, § 77.) ■ A single consideration may support several counterpromises. (*H. S. Crocker Co., Inc.* v. *McFaddin*, 148 Cal.App.2d 639, 645 [307 P.2d. 429].)

■ It is interesting to note that the conditional sale contract which Caldera signed in blank recites a total contract balance due of $2,505.73. The policy received by Caldera shows the amount of the contract as $2,598.73, a difference of $93. The insurer must have obtained the contract figure from defendant. The uncontradicted evidence shows that the cost of public liability and property damage in basic limits plus $500 medical payments coverage was $63. Figuring the transaction with one year's premiums in advance as Rozany did with the other coverages, the total charges equal the $93 difference.

■ The evidence recited, contrary to defendant's claim, shows there was a meeting of minds. It is argued that because Rozany testified he did not know what the term "full coverage" meant there could be no meeting of minds. The jury was not compelled to believe Rozany. He was thoroughly impeached. The jury may have inferred his knowledge from his experience. He had been a new car salesman since 1937, three years with defendant, and had sold around 300 cars "or better." Defendant was a licensed insurance broker with an insurance department operated in connection with its auto sales business. Rozany told Mrs. Caldera full coverage "includes everything."

■ Referring to the testimony of the witness Bennett, which was admitted over its objection, defendant argues it was erroneously admitted in that it was proof of custom and usage for the purpose of creating a contract, which may not be done. Custom and usage was not relied on to create a contract. It was admitted for the purpose of explaining and interpreting the phrase, "full coverage," and for that purpose it was admissible. (Code Civ. Proc., § 1870, subd. 12.) Furthermore, the testimony was in effect merely a statement of the law which every person is presumed to know and of which the court could take judicial notice. (Veh. Code, § 415.)

■ Defendant contends plaintiffs were not third party beneficiaries. "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." (Civ. Code, § 1559.)

■ Where one person for a valuable consideration engages with another to do some act for the benefit of a third person, and the agreement thus made has not been rescinded, the

party for whose benefit the contract or promise was made, or who would enjoy the benefit of the act, may maintain an action against the promisor for the breach of his engagement. ■ While the contract remains unrescinded, the relations of the parties are the same as though the promise had been made directly to the third party. Although the party for whose benefit the promise was made was not cognizant of it when made, it is, if adopted by him, deemed to have been made to him. He may sue on the promise. ■ Where a promise is made to benefit a third party on the happening of a certain contingency, the third party may enforce the contract on the occurrence of that contingency. (12 Cal.Jur.2d 493, § 261.)

■ The action by a third party beneficiary for the breach of the promisor's engagement does not rest on the ground of any actual or supposed relationship between the parties but on the broad and more satisfactory basis that the law, operating on the acts of the parties, creates the duty, establishes a privity, and implies the promise and obligation on which the action is founded. (*Washer* v. *Independent Min. & Dev. Co.*, 142 Cal. 702, 708-9 [76 P. 654].)

■ It is not necessary that the beneficiary be named and identified as an individual; a third party may enforce a contract if he can show he is a member of a class for whose benefit it was made. (*Calhoun* v. *Downs*, 211 Cal. 766, 770-1 [297 P. 548]; *Garratt* v. *Baker*, 5 Cal.2d 745, 748 [56 P.2d 225]; *Shell* v. *Schmidt*, 126 Cal.App.2d 279, 290 [272 P.2d 82]; *Woodhead Lbr. Co.* v. *E. G. Niemann Inv.*, 99 Cal.App. 456, 459 [278 P. 913].) ■ It is no objection to the maintenance of an action by a third party that a suit might be brought also against the one to whom the promise was made. (*Malone* v. *Crescent City M. & T. Co.*, 77 Cal. 38, 44 [18 P. 858].)

■ The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. (*Le Ballister* v. *Redwood Theatres, Inc.*, 1 Cal.App.2d 447, 449 [36 P.2d 827].) ■ If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract.

■ It is held that a person injured may sue on a contract for the benefit of all members of the public who are so injured since the happening of the injury sufficiently determines his

identity and right of action. (*Levy* v. *Daniels' U-Drive Auto Renting Co.*, 108 Conn. 333 [143 A. 163, 165, 61 A.L.R. 846].)

Section 11580 of the Insurance Code reads:

"A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this State unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein.

"(a)   Unless it contains such provisions, the following policies of insurance shall not be thus issued or delivered:

"(1) Against loss or damage resulting from liability for injury suffered by another person other than a policy of workmen's compensation insurance.

"(2) Against loss of or damage to property caused by draught animals or any vehicle, and for which the insured is liable.

"(b) Such policy shall not be thus issued or delivered to any person in this State unless it contains all the following provisions:

"(1) A provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy.

"(2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

The statute is a part of every policy and creates a contractual relation which inures to the benefit of any and every person who might be negligently injured by the insured as completely as if such injured person had been specifically named in the policy. (*Malmgren* v. *Southwestern A. Ins. Co.*, 201 Cal. 29, 33 [255 P. 512]; *Bias* v. *Ohio Farmers Indemnity Co.*, 28 Cal.App.2d 14, 16 [81 P.2d 1057].) The primary purpose of the statute is to protect an injured person when the insured is bankrupt or insolvent. (*Hynding* v. *Home Acc. Ins. Co.*, 214 Cal. 743, 746 [7 P.2d 999, 85 A.L.R. 13].) The complaint here alleges Caldera is insolvent and there was evidence to that effect. The statute in effect makes the tortfeasee a creditor beneficiary. It makes the benefit of the policy available to the creditor beneficiary tortfeasee. (See 27 Cal.L.Rev. 497, 529.)

In *James Stewart & Co.* v. *Law,* 149 Tex. 392 [233 S.W.2d 558, 22 A.L.R.2d 639], a corporation—the owner—entered into a contract with a contractor for the erection of certain buildings. The contract expressly obligated the contractor to maintain certain insurance, and also provided that in case any part of the contract was sublet by the contractor the latter should require of its subcontractor the maintenance of automobile liability insurance. The contractor sublet part of the work to a subcontractor who in turn contracted with a truck owner for the hauling of gravel in connection with the performance of his subcontract. Neither the contractor nor the subcontractor required his respective subcontractor to carry automobile insurance and none was carried by the truck owner. While hauling gravel, the latter injured an employee of the owner, and the employee brought suit against the contractor to recover damages on the theory that the contractor had breached its contract with the owner by failing to see that all subcontractors carried automobile liability insurance, and that he, the employee, was a third party beneficiary of such contract. The court held the injured employee was a third party beneficiary under the contract and as such entitled to maintain suit against the contractor.[2]

---

[2]The court stated (233 S.W.2d 561): ''Petitioners appear to place their principal emphasis upon the proposition that Law and Pacific Indemnity are not third party beneficiaries under the contract between North American and Stewart & Company. They invoke the principle that parties are presumed to contract for their own benefit and not that of another. In the application of that principle to the contract before us they take the position that the intent of the parties in requiring automobile liability insurance of contractors and subcontractors was to protect the owner by safeguarding the solvency of the contractor and subcontractors so that they could perform their contracts. If it be assumed that the motive of North American was only the selfish one to protect itself and not that of benefiting third parties, it does not follow that it did not intend to benefit third parties. Motive and intent are not synonymous. In *United Fidelity Life Insurance Co.* v. *Adair,* Tex. Civ. App., 29 S.W.2d 940, 943, affirmed Tex. Com. App., 29 S.W.2d 944, the opinion quotes with approval this language clearly pointing out the distinction between motive and intent: 'Intent, in its legal sense, is quite distinct from motive. It is defined as the purpose to use a particular means to effect a certain result. Motive is the reason which leads the mind to desire that result.' The means employed by the contracting parties to effect the result which they had in mind was to require that the contractor and subcontractors maintain various types of insurance. The law presumes that'the parties to a contract intend the consequences of its performance. The intent of the requirement that the contractor should see that all subcontractors carry automobile liability insurance was necessarily to provide a method by which claims of liability of the type insured against could be paid by insurers. Respondents' claim is of that type. Had petitioners required the subcontractor to procure a policy of liability insurance, Law would have benefited thereby, and Pacific In-

*Buckley* v. *Gray*, 110 Cal. 339 [42 P. 900, 52 Am.St.Rep. 88, 31 L.R.A. 862], relied on by defendant, was overruled in *Biakanja* v. *Irving*, 49 Cal.2d 647, 651 [320 P.2d 16].

There is no escape from the conclusion that the agreement between defendant and Caldera was not for the sole benefit of the latter but that it was intended to inure to the benefit of third persons who might be protected by a full coverage policy. (*Cf. Goff* v. *Ladd*, 161 Cal. 257, 258 [118 P. 792]; *French* v. *Farmer*, 178 Cal. 218, 221 [172 P. 1102]; *Sunset Lumber Co.* v. *Smith*, 91 Cal.App. 746, 750-751 [267 P. 738]. See anno.: 81 A.L.R. 1271; 26 Cal.L.Rev. 627.) The intent to confer a benefit on anyone to whom Caldera might become liable as a result of a hazard incident to ownership and operation of the Mercury is obvious. This is precisely what Caldera wanted as a means of obtaining a benefit to himself. It must have been in the contemplation of the parties when Rozany agreed to procure public liability and property damage insurance that injury to third persons might result from ownership and operation of the Mercury. It was reasonable for the jury to infer that Caldera, in making the agreement with defendant, desired and intended that such persons be protected in the event of an accident with the Mercury. The jury's finding that there was a third party beneficiary contract breached by defendant to plaintiffs' damage is amply supported by the record.

The action is for breach of an oral contract to procure insurance; it is not based on fraud, as defendant asserts. Proof of fraud was merely incidental to proof of the contract. Defendant filed a general and special demurrer to the complaint which was overruled. Error is asserted. It is said there is no "allegation that the alleged agreement was for the express benefit of plaintiffs." Sufficient facts are alleged to show that it was for plaintiffs' benefit.[3] While there are some uncertainties in the complaint, no prejudice is shown. Depositions were taken before trial, the cause was fully and fairly

---

demnity would have been subrogated in part to Law's rights. North American and Stewart & Company must be presumed to have intended that that consequence flow from the performance of their contract. It follows that, in our view, respondents were entitled to maintain this suit on the contract.''

[3]It is alleged defendant promised to procure for Caldera full coverage insurance including public liability and property damage for the operation of the Mercury and "At all times mentioned, Plaintiff Willie Mae johnson was and now is within that class of persons for whom the contract aforesaid between Defendant Phillip R. Caldera and Defendant Holmes Tuttle was expressly made.'' A like allegation is made with respect to plaintiff Jones.

tried, defendant does not claim surprise, and the error, if any, in overruling the special demurrer did not affect defendant's substantial rights in any way.

Other points made do not require discussion.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied June 2, 1958, and appellant's petition for a hearing by the Supreme Court was denied July 2, 1958.