**EMSCO SCREEN PIPE COMPANY OF TEXAS, Inc., Appellant,**

**v.**

**HEIGHTS MUFFLER COMPANY et al., Appellees.**

**No. 8.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Oct. 11, 1967.

Wendell S. Loomis, Houston, for appellant.

Knight, Prappas, Rowland & Caldwell, Everett B. Williams, and Ellis F. Morris, Houston, for appellees.

BARRON, Justice.

This is a suit on a sworn account filed by Emsco Screen Pipe Company of Texas, Inc. against Southwestern Muffler Manufacturing Company and Heights Muffler Company (the first business succeeding the latter), and Bernard Vlahakis and Louis Gostecnik, the last two individuals named being partners in the former firm of Heights Muffler Company. Plaintiff's primary recovery was stipulated to be in the sum of $3,599.88 with 15% as attorney's fees on the amount of the net recovery. The original claim was not disputed, and the amount sued for by plaintiff-appellant was allowed by the trial court as a recovery against appellees. Southwestern Muffler Manufacturing Company, however, by cross-action and counterclaim, alleged credits and offsets against this account in the sum of $5,540.20 for returned and allegedly defective mufflers sold by Emsco to the appellees, which appellees claim were not credited to the account. For such returned mufflers Southwestern made claim by way of offset against Emsco's claim.

Trial was to the court. At the conclusion of the testimony the trial court rendered judgment for the full amount sued for by Emsco and allowed recovery by appellee, Southwestern, for $3,546.58; allowed Emsco the balance of $53.05 and attorney's fees of $7.96, a total of $61.01. Plaintiff Emsco has appealed from the judgment of the trial court attacking the allowance of the offset.

A statement is necessary. The parties did business together from about August, 1960 through August, 1962. Heights Muffler Company and Southwestern Muffler Manufacturing Company, a corporation, acted as distributor of mufflers manufactured by Emsco during the entire period Emsco was manufacturing mufflers, and the appellees purchased $89,200.39 worth of mufflers during the whole period. Appellees sold the mufflers to wholesalers and retailers, who sold and installed the mufflers on various automobiles. Emsco guaranteed the mufflers "against defects in workmanship and material, and from failure from rust and corrosion, for the useful life of the car" while they were in the possession of the purchasers.

When a muffler proved to be defective, the retailer honored the guarantee and returned it to the appellees, who allowed a cash credit to the retailer's account for the defective muffler. The mufflers were then returned by appellees to Emsco for credit to appellee's account. Appellees returned mufflers on various occasions and received proper credit, and at no time did appellees return the guarantee certificate issued to the user by the retailer to plaintiff, Emsco. In August, 1962, Emsco notified its customers that it was discontinuing operation of its muffler division, whereupon Southwestern ceased purchasing mufflers from Emsco. However, Southwestern continued to return defective mufflers to plaintiff without user's warranty certificates as it had done before Emsco discontinued its muffler supply. The record shows that Emsco attempted to protect itself from credits for the returned mufflers and notified Southwestern that its acceptance of the returns would be more rigid after August, 1962. Emsco, however, continued to accept the returned property but failed to allow Southwestern credit for defective mufflers.

Appellant contends that the trial court erred in allowing appellee to recover on its cross-action on the court's theory that "by custom and usage, the parties, in their business dealings, one with the other, established a contract which provided for allowance of credit to the defendant for merchandise returned to the plaintiff." Southwestern Muffler Manufacturing Company in its cross-action alleged that the plaintiff

was "indebted to cross-plaintiff * * * for the returning of goods and merchandise to the cross-defendant which was delivered to and accepted by cross-defendant * * *", and alleged that the cross-plaintiff was claiming that sum of money for merchandise returned and delivered. Further, it was alleged that " * * * in accordance with long established customary procedure cross-plaintiff in the regular course of business, returned for credit, damaged and defective products, and obtained receipts therefor." Objection is made that there are no pleadings and no proof to sustain the trial court's findings of fact that by custom and usage the parties in their business dealings, one with the other, established a contract for allowance of credit under which Southwestern returned the mufflers to Emsco.

The allegations were plain that appellee was claiming the mufflers as an offset by agreement and course of conduct on the part of Emsco and appellees, and there was nothing in the allegations or defect in the pleadings which should have confused or mislead appellant. The testimony is sufficient to show that mufflers were regularly returned by appellee when they became defective and that they were accepted by Emsco by the signature of its agents.

■■■ Appellant Emsco apparently refused to allow credit on the merchandise involved in this lawsuit after August, 1962, upon the ground that the guarantee forms (not a part of any specific agreement between Emsco and Southwestern), were not returned to Emsco, and therefore there was no authority to return the property. But the testimony shows that no conditions were agreed upon in Southwestern's case, and that Emsco from the beginning accepted the returned merchandise without the guarantee forms and had issued credits for it. The record does not show as a matter of law that return of the guarantee certificates was required in the case of appellee, though their return was required in the case of a purchaser who returned a defective muffler to the retailer who sold it to him. While the testimony is conflicting, it is sufficient to support the trial court's finding that there was an agreement for the return of defective mufflers and that proper credits would be allowed.

The record shows an attempted change of policy on the part of Emsco after a Mr. Johnson came into the operation of appellant's company. On September 17, 1963, Southwestern Muffler Manufacturing Company received a letter from Emsco, signed by C. E. Johnson, to the effect that returned mufflers had not been replaced in accordance with the guarantee by Emsco, because the certificates were not returned with the defective mufflers and no proof of replacement had been shown. But Mrs. Cynthia Walker, office manager of Emsco, testified that Emsco received mufflers from appellee prior to August 31, 1962, without warranty certificates. She further testified that she was the person to honor or dishonor warranties for Emsco and that she continued after August 31, 1962 to accept goods back without the guarantees on about twelve occasions. She testified that she. had instructions to accept them, and that the defective mufflers were retained by Emsco. The only specific testimony that no credits would be allowed on the returned merchandise was a letter of September 17, 1963.

As stated above, appellant discontinued its muffler supply in August, 1962. At that time the business dealings between the parties terminated. For mufflers sold to appellees prior to that time, the appellant could not change their course of dealings unilaterally and add new conditions regarding the return of defective merchandise. There is no evidence that the parties agreed to any such new conditions. It is not contended that the mufflers were not defective.

■■■ The contract in this case was oral and vague in certain particulars. While the

sale of merchandise to a purchaser, with certain discounts, to be paid for by the purchaser on an open account is an ordinary business transaction and not unusual, the return of allegedly defective property by the purchaser for credit upon his account may be subject to certain conditions and circumstances. These circumstances here were ill defined or not defined at all. Usage or custom is admissible to determine the terms of a contract where parties have not defined them, provided such usage or custom is so well established and generally known as to raise a presumption that the parties knew of it and contracted with reference to it. The parties themselves are in the best position to know what was intended by their conduct and the language used by them. Great weight should be given to the interpretation placed by the parties on a contract of uncertain meaning. It is undisputed that appellee, until the end of August, 1962, returned the merchandise to appellant freely and unconditionally and received proper credits without further proof that the merchandise was defective. This procedure continued until a short time after September 17, 1963. The mufflers were accepted by appellant, who signed receipts for them. The official who passed upon the warranties testified that she was instructed to receive them. We believe the trial court was correct in finding that the merchandise was returned for credit pursuant to the true understanding and agreement of the parties. James Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558, 561 (1950); Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504 (1942); 13 Tex.Jur.2d p. 300 et seq., Secs. 128, 129; Jackson Brewing Co. v. Clarke, 375 S.W.2d 352, 355 (Tex.Civ.App.) error ref., n. r. e.

We have carefully examined appellants remaining points of error, numbers 4 and 5, and find that they present no reversible error. Rule 434, Texas Rules of Civil Procedure.

Judgment affirmed.