**DRILLING WELL CONTROL, INC.,**
Appellant,

v.

**SMITH INDUSTRIES, INC., Appellee.**

No. 368.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Oct. 7, 1970.

Rehearing Denied Oct. 28, 1970.

George H. Hagle, Andrews, Kurth, Campbell & Jones, Houston, for appellant.

John L. McConn, Jr., and Charles G. King, Butler, Binion, Rice, Cook & Knapp, Houston, for appellee.

SAM D. JOHNSON, Justice.

Suit for damages for breach of contract instituted by the appellee, Smith Industries, Inc., against the appellant, Drilling Well Control, Inc. Trial was before the court without the intervention of a jury. Judgment was rendered against the appellant, Drilling Well Control, Inc., and in favor of the appellee, Smith Industries, Inc., in the amount of $38,133.62. The parties will be referred to as "Well Control" and "Smith."

Well Control furnished specialized equipment and engineering to the drilling industry. It used a special type of well control unit in the performance of its work. A component part of this unit was a mud separator vessel. Smith was an oil field service company which manufactured or fabricated such specialized equipment or parts thereof. On order, Smith would assemble the various necessary materials from suppliers and then manufacture or fabricate such mud separator vessels for Well Control. The separator sets were not stock items and most of the materials for them had to be specially ordered. After the materials were on hand their fabrication or manufacture by Smith took from two to four weeks. The mud separator sets were expensive items costing in excess of $5,000. From 1963 to June, 1965, Smith had manufactured some 14 to 16 of these separator sets for Well Control. There were delays supplying these sets, however, which were a source of concern and complaint by Well Control. As a result, representatives of the two companies discussed the problem and the giving of more advance notice on future orders. On April 9, 1964, Well Control communicated in writing to Smith setting forth its anticipated requirement of the sets during the next six months. The letter was entitled "Letter of Intent" and stated that no shipments against the letter were to be made without a formal purchase order or purchase number from its purchasing agent. By June 4, 1965, five sets of separators had been fabricated, delivered and paid for under the April 9 letter.

On this date, June 4, 1965, the purchasing agent for Well Control phoned the order desk of Smith and talked to Smith's salesman. Their telephone conversation concerned Well Control's anticipated needs and requirements of the separator sets for future months. Such needs and requirements were established to be 14 sets of separators during the months of July to December, 1965. Smith's salesman wrote up an intra-company sales order for 13 sets (since one was still in fabrication under the April 9 letter), setting forth the schedule given him by appellant's purchasing agent.

Three days later, on Monday, June 7, 1965, Smith's salesman went to Well Control's purchasing agent's office and picked up a letter of that date which was, like the previous letter, entitled "Letter of Intent." It referred to the telephone conversation of three days earlier and set forth the anticipated requirement for 14 additional sets stating that it would "require" this material. It indicated that no *shipments* were to be made against such letter without a formal purchase order or order number but proceeded to set forth the schedule of its anticipated requirements. The letter also spoke of a possible increase in Well Control's need but made no reference to any possible decrease. Based on the telephone conversation and with the letter in hand, Smith proceeded with the acquisition of the various materials necessary for the manufacture of the separator sets and began fabrication in July, 1965.

It is apparent in the record that Well Control knew that Smith had proceeded with the acquisition of the various components of the mud separator vessels and was in the process of fabricating the sets in accordance with the telephone conversation of June 4th and following letter of June 7th. Five sets were completed by Smith and were shipped and paid for under the 14-set agreement. Well Control's vice president told an agent of Smith that "it

had an order for the sets" sometime after September, 1965. The president of Well Control acknowledged that he knew when he wrote the June 7th letter that the sets must be fabricated before they could be shipped. A letter from Well Control's construction engineer on August 12, 1965 made reference to their requirements on "all future vessels." On April 29, 1965, Well Control was informed through its purchasing agent that three separator sets would be ready by the week of September 27, 1965. Well Control's subsequent response was that the three sets would not be needed until November, 1965 and that they did not anticipate needing the additional sets then being fabricated until after January, 1966. As of the time of this last communication there does not appear to be any indication that all of the 14 sets would not be needed by Well Control. There had been no request to anyone at Smith to stop work on the sets. At about this time, however, it appears that Well Control's need for the separator sets expired either as a result of a decline in business or because a much less expensive competing set appeared in the industry. The first word from Well Control to Smith to hold up fabrication of the separator sets came on November 1, 1965.

At the time of suit Smith had on hand three completed mud separator sets on which fabrication was completed in September upon which Well Control had refused to take delivery. In addition, Smith had six other incomplete sets in the process of fabrication on which work was terminated when it was informed by Well Control to hold up work.

 The trial court made a number of findings: That Well Control's purchasing agent placed a verbal order for 14 mud separator sets which was orally accepted by Smith's salesman on June 4, 1965. That on June 7, 1965, Well Control's purchasing agent acting under the authority of the company president, wrote a letter confirming such order. That Smith acted reasonably in ordering material for three sets.

That by custom and usage in the oil field fabricating business a verbal order is construed as a firm contract, if accepted, and that a "letter of intent" such as the June 7, 1965 letter, is construed as a firm order and contract if accepted. That Well Control, by acts and conduct of its authorized personnel, ratified the contract between the parties.

The court determined that Well Control breached its contract with Smith in failing to take delivery of the three completed separator sets within a reasonable time and was guilty of an anticipatory breach of contract in regard to the six separator sets which were incomplete but in the process of fabrication.

On appeal, Well Control, the appellant, contends that the trial court erred in finding the existence of a contract between the parties, erred in finding ratification of the contract and erred in finding damages in the amount of $38,132.62. Appellant's contentions will be overruled.

 The parties involved were quite obviously experienced individuals both in the industry and in the method of operation of their particular companies. Additionally, they were not lacking in experience in dealing with each other. They were experienced in this type of work and knew what was expected of each party. Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744 (1937). In view of the parties' prior business dealings the trial court could have concluded, as it obviously did, that at the time of the phone call of June 4th their agreement and understanding with each other constituted an order by Well Control and an acceptance by Smith which was reasonably definite, certain and left no reasonable doubt as to what the parties intended. Their agreement was then confirmed by Well Control's letter of June 4th. The price of the sets had been established in the previous dealings between the parties and the order was specific as to type, quantity and delivery. An oral order such as the one at bar, along with an ac-

ceptance by the manufacturer, may constitute a binding contract. Kirkwood & Morgan, Inc. v. Roach, Tex.Civ.App. 360 S.W. 2d 173, writ ref., n. r. e. The existence of such oral contract may be established by circumstances as well as direct evidence. Clower v. Brookman, Tex.Civ.App., 325 S. W.2d 440, no writ hist. We believe the existence of the contract to have been shown and we concur in the determination of the trial court that the dealing between these parties did constitute a binding obligation in this instance.

 Of added significance is the evidence in the record, and the finding by the court, that letters of intent were treated in the industry as firm orders. Custom and usage is a question of fact, Holder v. Swift, Tex.Civ.App., 147 S.W. 690, no writ hist.; Missouri K. & T. Ry. Co. of Texas v. Ryon, Tex.Civ.App., 177 S.W. 525, writ ref., and such fact has been found by the court herein upon ample evidence. Evidence of custom and usage is admissible to determine the terms of a contract, provided such custom or usage is so well established and generally known as to raise a presumption that the parties knew of it and contracted with reference to it. Emsco Screen Pipe Co. of Texas, Inc. v. Heights Muffler Co., Tex.Civ.App., 420 S.W.2d 179, no writ hist. The significance of such custom and usage in the industry is most compelling in this situation where a prior similar transaction, confirmed by an almost identical letter, had been treated as an order between these same parties. Any doubts about the construction to be given to the instant letter must be resolved against its author, Well Control. Amory Mfg. Co. v. Gulf C. & S. F. Ry. Co., 89 Tex. 419, 37 S.W. 856; Magnolia Petroleum Co. v. Aiken (Tex.Civ.App.), 289 S.W. 152, reversed on other grounds at 11 S.W. 2d 1113 (Tex.Comm.App.); Pledger v. Business Men's Accident Ass'n of Texas (Tex.Comm.App.), 228 S.W. 110.

The record obtains added strength with evidence, and finding by the court, of ratification. It is rather implicit in the record that Well Control ordered the sets, confirmed its order by letter and gave every indication from that time forward that all sets would be taken. These facts gained in verification when, on November 1, 1965, Well Control communicated to Smith that it should hold up work on any future vessels.

Appellant's two points of error relative to the contract and its ratification are overruled, as is its final point of error relative to the damages found by the court. The judgment of the trial court is affirmed.