DENNIS, Circuit Judge,
dissenting:
To the detriment of the insured, the majority gives the terms of this insurance policy their technical, rather than popular, meaning. Because this method of interpretation contravenes established canons of Texas insurance law, I respectfully dissent.
I.
The threshold question is whether Par-kans’s letter of credit is a “covered instrument.” The policy defines covered instruments as:
Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in “money” that are:
3. Made or drawn by or drawn upon [Parkans];
4. Made or drawn by one acting as [Parkans’s] agent;
or that are purported to have been so made or drawn.
Because the policy provision refers to “checks,” “drafts,” and “promissory notes,” the majority argues that the word “drawn” must be read in context according to its meaning under the UCC. It therefore concludes that the phrase “drawn by or drawn upon” limits coverage to transactions in which the insured is the actual “drawee” under Texas commercial paper law. Since Midland Bank was technically the drawee in this transaction, the court holds that the letter of credit was not “drawn upon” Par-kans and therefore was not a covered instrument.
The majority’s interpretation conflicts with basic principles of Texas insurance law. When interpreting an insurance contract, Texas courts will read its terms in their plain, ordinary, and popular sense unless the policy defines a term in some other way.[1] Texas courts disfavor inter *521 pretations that limit coverage, and they construe ambiguities in favor of the insured.[2] Under these principles, Parkans was covered for its loss.
In the present context, the relevant popular definition of “draw” is “to withdraw” or “to take or receive money from a source of supply.”[3] Under this plain-language reading, the letter of credit was “drawn upon” Parkans because the funds stolen in this transaction were ultimately drawn from Parkans’s account.[4] And, to the extent that it is unclear whether the policy requires that Parkans be the technical drawee of the instrument, we are compelled to construe this ambiguity in favor of coverage.
The majority rejects this plain reading of the policy in favor of a more technical one. Relying on Gulf Metals Industries, Inc. v. Chicago Insurance Co.,[5] the majority argues that the policy must be read in the commercial paper context and according to UCC definitions. The majority’s reliance on Gulf Metals is, however, misplaced. At issue in Gulf Metals was the meaning of the phrase “sudden and accidental” as it appeared in an insurance policy.[6] The district court held that the term “sudden” adds a temporal element, meaning “abrupt” or “brief.”[7] The insured disagreed, arguing that “sudden” does not necessarily carry a temporal meaning. Citing various dictionary definitions, the insured argued that the word can also mean “unexpected,” and that this uncertainty of meaning proves that the policy is ambiguous.[8]
The Texas appeals court rejected the insured’s argument.[9] Noting that the word “sudden” appeared in conjunction with the word “accidental,” the court reasoned that “sudden” must add a temporal requirement. “Because ‘accidental’ describes an unforeseen or unexpected event,” the court held that “to ascribe the same meaning to ‘sudden’ would render the terms redundant and violate the rule that each word in a contract be given effect.”[10] Thus, both of the proffered interpretations were ordinary, or popular; the court was not rejecting a plain-language interpretation in favor of a technical one. Rather, the court held that, in context, “sudden” was clearly being used in its popular temporal sense.
*522 Contextual arguments like the one used in Gulf Metals are useful for interpreting terms that have multiple common meanings, but not for choosing a technical interpretation over a reasonable common interpretation. In this case, for instance, the phrase “drawn upon” cannot mean that the instrument must be “sketched” or “illustrated” upon Parkans’s corporate headquarters, because the policy clearly uses the phrase in the context of monetary withdrawals. But there is nothing in the context of the policy that limits the word “drawn” to its technical meaning under the UCC. The term is not specifically defined, and the policy makes no reference to the Texas Business and Commerce Code. Under Texas insurance law, if Zurich intended for the term to have a definition other than an ordinary one, it was required to define the term accordingly.[11]
Texas courts will sometimes interpret a term in an insurance policy according to its usage within a particular “vocation, trade, or industry.”[12] Reliance on trade usage is, however, only appropriate when the insured is acquainted with and has adopted the usage.[13] For example, in Mescalero Energy, Inc. v. Underwriters Indemnity General Agency, Inc., a Texas appellate court applied the trade usage of the term “foundation” when interpreting a “Blowout Insurance Policy.”[14] The insured in Mes-calero was an oil and gas drilling contractor engaged in the practice of drilling horizontal wells.[15] The policy was specifically designed to insure contractors against blowouts, which are common hazards associated with horizontal drilling.[16] Thus, the insured was acquainted with the industry usage, and it was reasonable to assume that the parties intended to incorporate that usage into this industry-specific policy.
In contrast to Mescalero, there is no evidence in the present case that Parkans was familiar with commercial paper terminology or that the parties intended to incorporate UCC definitions. Parkans recycles scrap metal; it does not provide banking or legal services. There is no reason to assume that the company’s officials were familiar with the technical terminology of commercial paper law. Furthermore, Parkans’s policy covers general *523 commercial liability including bodily injuries, property damage, and other generic losses that most businesses incur; it is not specific to banking-related losses. Thus, there is nothing in the record to suggest that the parties intended to incorporate a more specialized meaning.
In short, I would find coverage under the primary policy. Under a plain reading of the policy, the letter of credit was “drawn upon” Parkans in the sense that the money was ultimately drawn from Par-kans’s account. There is no valid contextual or trade usage argument for reading the policy in a specialized commercial-law sense.
II.
Because I disagree with the majority’s conclusion that there is no coverage under Parkans’s primary policy, I also disagree with its conclusion that there is no coverage under the umbrella policy. The umbrella policy applies in “excess of, but in the same manner and on the same basis as the primary insurance listed in Schedule A....” Schedule A lists Parkans’s CGL policy as one of the primary policies covered by the umbrella policy. Thus, since the provisions at issue in this case fall under the CGL policy, Parkans was also covered under its umbrella policy.
III.
For the foregoing reasons, I would affirm the district court’s ruling. Under a proper, plain reading of Parkans’s primary and umbrella policies, this loss was covered.

. Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex.1984) ("[I]t is the court’s duty to give the words used their plain meaning.”); Ramsay v. Md. Amer. Gen. Ins. Co., 533 S.W.2d 344, 346 (Tex.1976) ("With no definition in the policy, we must first determine whether the term has a readily ascertainable meaning in the plain, ordinary and popular sense of the words themselves.”); see also 45 Tex. Jur. § 109, at 130-31 (3d ed. 1995) ("Contracts of insurance must be construed, as other contracts, according to the terms that the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense, unless there are other provisions indicating a con- *521 traiy intention of the parties. Thus, if the insurance policy does not define the terms used, they are to be given their plain, ordinary, and generally accepted meaning.").

. Puckett, 678 S.W.2d at 938 ("It is well established that insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage.”); Ramsay, 533 S.W.2d at 349 (“When the language of a policy is susceptible of more than one reasonable construction, the courts will apply the construction which favors the insured and permits recovery.”).

. The American Heritage Dictionary 561 (3d ed. 1992) (defining "draw” as "To withdraw (money).”); Black’s Law Dictionary 494-95 (7th ed. 1999) ("To take out (money) from a bank, treasury, or other depository.”); IV Oxford English Dictionary 1026 (2d ed. 1989) ("To take, receive, or obtain (money, salary, revenue, etc.) from a source of supply.”).

. See Omnisource v. CNA/Transcontinental Ins. Co., 949 F.Supp. 681, 688-90 (N.D.Ind.1996) (applying this plain-language construction of the phrase “drawn upon” and finding coverage for a similar loss under a similar policy).

. 993 S.W.2d 800 (Tex.App.-Austin 1999, pet. denied).

. Id. at 803.

. Id. at 805.

. Id.

. Id. at 806.

. Id. at 805.

. See W. Reserve Life Ins. Co. v. Meadows, 152 Tex. 559, 261 S.W.2d 554, 557 (1953) (stating that the terms of an insurance contract "are to be given their plain, ordinary and generally accepted meaning unless the instrument itself shows them to have been used in a technical or different sense"); 45 Tex. Jur. § 109, at 131 ("[I]f the insurance policy does not define the terms used, they are to be given their plain, ordinary, and generally accepted meaning.”).

. Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc., 56 S.W.3d 313, 320 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (quoting Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 521 n. 6 (Tex.1995)).

. Emsco Screen Pipe Co. v. Heights Muffler Co., 420 S.W.2d 179, 182 (Tex.Civ.App.-Houston [14th Dist.] 1967, no writ) ("Usage or custom is admissible to determine the terms of a contract where parties have not defined them, provided such usage or custom is so well established and generally known as to raise a presumption that the parties knew of it and contracted with reference to it.”); Trinity Universal Ins. Co. v. Rogers, 215 S.W.2d 349, 355-56 (Tex.Civ.App.-Dallas 1948, no writ) (stating that a party cannot be bound by a custom or usage unless the party knows of and has accepted the usage); see also 45 Tex. Jur. § 120, at 143-44 ("The general rule is that usage in a particular place, or of a particular class of persons, may not be binding on other persons unless they are acquainted with and adopt it.”).

. 56 S.W.3d at 319.

. Id. at 315-16.

. Id.