Alain GAMBRA, individually, and as personal representative of the Estate of Stephanie Gambra, deceased; Madeleine Gambra, Plaintiffs,

v.

INTERNATIONAL LEASE ·FINANCE CORPORATION, a California corporation; the Boeing Company, an Illinois corporation; Honeywell International, Inc., a Delaware corporation, Defendants.

No. CV 04–10129CASAJWX.

United States District Court,
C.D. California,
Western Division.

June 28, 2005.

Robert J. Nelson, Susie Injijian, Lieff Cabraser Heimann and Bernstein, San Francisco, CA, for Plaintiffs.

Christopher R. Barth, Gary Westerberg, Lord Bissell and Brook, Chicago, IL, Donald E. Chomiak, Lord Bissell & Brook, Los Angeles, CA, Allison Roseman Kendrick, John D. Dillow, Perkins Coie, Seattle, WA, Ronald A. McIntire, Perkins Coie, Santa Monica, CA, Don G. Rushing, William Daniel Janicki, William V. O'Connor, Jr., Morrison and Foerster, San Diego, CA, Elwood G. Lui, Jones Day, Los Angeles, CA, Keith C. McDole, Thomas E. Fennell, Jones Day, Dallas, TX, for Defendants.

## ORDER CONDITIONALLY DISMISSING CASE ON GROUNDS OF FORUM NON CONVENIENS

SNYDER, District Judge.

### I. BACKGROUND

This case arises out of the crash of Flash Airlines ("Flash") Flight 604 in the Red Sea off the coast of Egypt while en route from Sharm el-Sheikh, Egypt, to Paris, France, on January 3, 2004.[1] All 148 aboard Flight 604 were killed in the crash. Breuhaus Decl. ¶ 2. Pursuant to Annex 13 to the Convention on International Civil Aviation, the Egyptian Ministry of Civil Aviation ("the MCA") is conducting the official investigation of the crash of Flight 604. Breuhaus Decl. ¶ 4. France's Bureau d'Enquête et d'Analyses ("BEA") and the United States National Transportation Safety Board ("NTSB") are also participating in the MCA's investigation. *Id.*

The 150 plaintiffs in the 56 consolidated cases before the Court are the heirs and beneficiaries of the estates of those who perished on Flight 604.[2] These plaintiffs are suing based on the deaths of 122 decedents. Supplemental Declaration of Allison Kendrick in Support of Defendants' Motion to Dismiss on the Grounds of Forum Non Conveniens ("Supp. Kendrick Decl.") ¶ 4(a). The plaintiffs are 145 individuals who are citizens or residents of France. *Id.* ¶ 4(b). All but two, *i.e.* 120 out of 122, of the decedents who are the subject of this litigation are citizens or residents of France. *Id.* Included in the plaintiffs before this Court are 139 plaintiffs who have also sued Flash and its insurer Al Chark Insurance Company ("Al Chark") in French courts, namely the Tribunal de Grande Instance ("TGI") of Bobigny, France. *Id.* ¶ 4(c). At least 121 of the 143 potential heirs and beneficiaries of the estates of the decedents are citizens or residents of France. *Id.* It appears undisputed that the Warsaw Convention mandates that plaintiffs' claims against Flash be brought in France or Egypt but not in the United States. Declaration of Processor Philippe Delebecque in Support of Defendants' Motion to Dismiss on the Grounds of Forum Non Conveniens ("Delebecque Decl.") ¶¶ 17, 33, Declaration of

---

1. The flight included a scheduled stop in Cairo, Egypt. Declaration of Richard Breuhaus in Support of Defendants' Motion to Dismiss on the Grounds of Forum Non Conveniens ("Breuhaus Decl.") ¶ 2.

2. At the time of the parties' last filings regarding defendants' motion to dismiss, 57 cases were consolidated in this action. However, on June 9, 2005, the Court received a Stipulation and Order of Dismissal in *Enas Tissam Hamouda et al. v. International Lease Finance Corporation et al.*, Case No. CV 04–10616 CAS (AJWx), stipulating to a dismissal of that case with prejudice. Accordingly, 56 cases are presently consolidated in this action. However, the statement of facts is based on 57 consolidated cases.

Professor Horatia Muir Watt in Support of Plaintiffs' Opposition to Defendants' Joint Motion for Dismissal on Grounds of Forum Non Conveniens ("Watt Decl.") ¶ 28.

Defendant International Lease Finance Corporation ("ILFC") is a corporation "engaged in the leasing of commercial aircraft, which activity it conducts primarily from its California headquarters." ILFC Answer to Gambra Complaint at 2. ILFC leased to Flash the Boeing 737–300 aircraft involved in the crash of Flight 604 which bore the serial number 26283 and Egyptian registration number SU–ZCF ("the subject aircraft"). *Id.;* Declaration of Julie I. Sackman in Support of Defendants' Motion to Dismiss on the Grounds of Forum Non Conveniens ("Sackman Decl.") ¶ 2. Defendant The Boeing Company ("Boeing") manufactured the subject aircraft, except for certain component parts that were manufactured by subcontractors or suppliers. Boeing Answer to Gambra Complaint at 2. Boeing sold the subject aircraft to ILFC in 1992 and ILFC leased the subject aircraft to Flash in 2001. *Id.;* Sackman Decl. ¶ 2. Defendant Parker Hannifin Corporation ("Parker Hannifin") manufactured certain component parts of the subject aircraft. Parker Hannifin Answer to Gambra First Amended Complaint. Defendant Honeywell International Inc. ("Honeywell") manufactured certain component parts of the flight management system for the subject aircraft. Honeywell Answer to Gambra Complaint at 2. Plaintiffs allege strict liability, negligence and breach of warranty claims against all defendants.

On February 24, 2005, defendants filed a joint motion to dismiss on the grounds of *forum non conveniens.* On June 13, 2005, the Court heard oral argument, permitted plaintiffs to file a sur-reply and thereafter took the matter under submission. Having considered the parties' arguments and evidence, the Court finds as follows:

## II. DISCUSSION

Defendants seek to dismiss this case on grounds of *forum non conveniens.* Plaintiffs argue that this Court is the most appropriate forum for this litigation.

 "The *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). "A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1118 (9th Cir.2002) (citing *Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1142–43 (9th Cir.2001)). "The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." *Id.* The Ninth Circuit has recognized that "the standard to be applied to a motion for dismissal on the ground of *forum non conveniens* is whether... defendants have made a clear showing of facts which...establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Id.* (quoting *Cheng v. Boeing Co.,* 708 F.2d 1406, 1410 (9th Cir.1983)) (internal brackets omitted). While there is a strong presumption in favor of plaintiff's choice of forum, "a foreign plaintiff's choice deserves less deference."[3] *Piper,* at 256. Nevertheless, "*[f]orum non conveniens* is 'an exceptional tool to be employed sparingly, not a...doctrine that compels plain-

---

3. Plaintiffs argue that pursuant to the terms of the Friendship, Commerce, and Navigation Treaty between the U.S. and France, they "are entitled to the same deference in their selection of a forum as a U.S. citizen...." Opp'n at 6. Plaintiffs also argue that they have

tiffs to choose the optimal forum for their claim.'" *Dole* at 1118 (internal brackets omitted) (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir.2000)).

## A. Adequate Alternative Forum

"To satisfy the adequacy requirement, this Court must find that (1) defendants are amenable to process in the alternative forum, and (2) the subject matter of the lawsuit is cognizable in the alternative forum so as to provide plaintiff[s] appropriate redress." *Bodner v. Banque Paribas*, 114 F.Supp.2d 117, 132 (E.D.N.Y.2000).

### (1) Subject to Jurisdiction and Amenable to Service of Process

■ If defendants are amenable to service of process, an alternative forum ordinarily exists. *Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. 252. "A defendant's agreement to submit to personal jurisdiction of the foreign country satisfies this requirement." Judge William W. Schwarzer *et al.*, California Practice Guide: Federal Civil Procedure Before Trial § 4:315 (The Rutter Group 2004) (citing *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir.1991)) (additional citation omitted).

■ Defendants argue that France is an available alternative forum because "defendants are willing to submit, as a condition to forum non conveniens dismissal of these actions, to the jurisdiction of a French court in actions refiled by plaintiffs there and to toll any statute of limitations that might apply to such refiled actions for 120 days after dismissal by this Court." Mot. at 10. Defendants contend that consent to jurisdiction in the French courts is permitted under French law and that "[w]hen a defendant voluntarily appears before a French·court and participates in the proceedings, that tribunal has no power to decline to exercise its jurisdiction where, as here, no other country's courts have exclusive jurisdiction over the case." *Id.* at 10–11. In support of this argument, defendants proffer portions of the Delebecque Decl. Professor Delebecque opines that if defendants consent to the jurisdiction of a French court, by participating in proceedings or demonstrating a willingness to be subject to such jurisdiction, a French court would not refuse to exercise jurisdiction over plaintiffs' claims. Delebecque Decl. ¶ 22. Professor Delebecque opines that Article 46 of the Noveau code de procédure civile ("N.C.P.C.") permits defendants to choose to refer the case to the location where the injury was suffered, which in this case might be the residence of the relatives and beneficiaries of decedents.[4] *Id.* ¶ 23(i). Further, according to Professor Delebecque, Article 14 of the French Civil Code would also justify

filed suit in California for legitimate reasons and that these reasons "tilt the balance of factors strongly towards this Court and entitle the Plaintiffs' choice of this forum to an even greater degree of deference." Opp'n at 5. These reasons include the following: defendants are all United States companies; the lease between ILFC and Flash included a forum selection clause for disputes between ILFC and Flash designating this Court as the appropriate forum for litigation and waiving inconvenient forum arguments; Boeing already selected this forum when it removed to this Court from Los Angeles County Superior Court the related case of *Madeline Witney, et*

*al. v. International Lease Finance, et al.*, Case No. CV 04–6230 CAS (AJWx); and litigation "involving the safety of a major U.S. product such as the aileron power control unit [at issue in this case] cannot be had conveniently, let alone effectively, an any non-U.S. forum." Opp'n at 7–11. In support of this argument, plaintiffs request that the Court judicially notice the Notice of Removal in *Witney v. Int'l Lease Finance*. The Court grants this request.

4. An English translation of Article 46 of the N.C.P.C., available at *www.legifrance.gouv.fr/html/frame_codesl.htm*. provides as follows:

 *Article 46.*

French jurisdiction because it provides for jurisdiction in France when a plaintiff is a French citizen or resident.[5] *Id.* ¶ 23(ii). Although Professor Delebecque notes that a French plaintiff waives the ability to assert jurisdiction based on Article 14 if he "voluntarily serves a writ on a foreigner abroad," he opines that plaintiffs may reverse the waiver by demonstrating that this Court rejected jurisdiction and that no case is currently pending in the United States. *Id.*, Supp. Delebecque Decl. ¶ 16; *see also* Reply at 7–10 (citing Declaration of Justice Jean–Paul Béraudo in Support of Defendants' Motion to Dismiss on the Grounds of Forum Non Conveniens ("Jus-tice Béraudo Decl.")). Professor Delebecque further suggests that Article 42(2) of the N.C.P.C. may provide a basis for jurisdiction based on the French court's jurisdiction over Flash in a related case.[6] Delebecque Decl.

¶ 23(iii).

Nevertheless, plaintiffs dispute that France provides an alternative forum. Plaintiffs argue that France is not an adequate alternative forum because the French courts do not have jurisdiction over claims by non-French plaintiffs. Opp'n at 12–13, 14–17; Watt Decl. ¶ 5. Plaintiffs also proffer the declarations of their experts,[7] who opine that a French

---

The claimant may seise at his choice, in addition to the court in whose province the defendant has established his dwelling;
-in contractual matters, the court in whose province actual delivery of the personalty or in whose province the performance of the agreed service has been contemplated;
-in delictual matters, the court in whose province the wrongful act was occasioned or the one in whose province the damage was suffered;
-in mixed matters, the court in whose province the immovable is situated;
-in matters of spousal maintenance or contribution to the expenses of marriage, the court in whose province the creditor has established his dwelling.
N.C.P.C. Article 46.

5. An English translation of Article 14 of the French Civil Code, available at *www.legifrance.gouv.fr/html/frame_codes1.htm.* provides as follows:
An alien, even if not residing in France, may be cited before French courts for the performance of obligations contracted by him in France with a French person; he may be called before the courts of France for obligations contracted by him in a foreign country towards French persons.
C. Civ. Article 14. Defendants contend that, based on two Cour de Cassation cases, Article 14 would permit non-French plaintiffs like the five in the present case to join their claims with those of French citizens such that a French court could exercise jurisdiction over all plaintiffs' claims. Reply at 7. Defendants refer to these cases as decided by the "French

Supreme Court." It appears that this is a reference to the Cour de Cassation.

6. Although the plaintiffs and the English translation of the Delebecque Decl. refer to Article 42 of the French Civil Code, *see* Opp'n at 15; translated Delebecque Decl. ¶ 23(iii), it appears that the proper reference, as set forth in the French version of the Delebecque Decl. is to Article 42 of the N.C.P.C. An English translation of Article 42 of the N.C.P.C., available at *www.legifrance.gouv.fr/html/frame_codes1.htm.* provides as follows:

*Article 42.*
The court territorially competent shall be, save where contrary provisions shall apply, the one for the situs where the defendant has established his dwelling.
Where there are several defendants, the claimant shall seise, at this choice, the court of the situs where one of them has established his dwelling.
Where the defendant has not known domicile or known residence, the claimant may seise the court of the situs where he has established his dwelling or anyone of his choice where he has established his dwelling in a foreign country.
N.C.P.C. Article 42.

7. Defendants argue that the opinions of Professors Watt and Lagarde are improper to the extent that they purport to interpret United States law. *See* Defendants' Objections to Evidence Submitted by Plaintiffs in Opposition to Motion to Dismiss on the Grounds of

court could determine *sua sponte* that French plaintiffs have waived their Article 14 privileges. Watt Decl. ¶ 6–10; Declaration of Professor Paul Lagarde in Support of Plaintiffs' Opposition to Defendants' Joint Motion for Dismissal on Grounds of Forum Non Conveniens ("Lagarde Decl.") ¶¶ 10, 37–42. Moreover, plaintiffs' experts opine that jurisdiction pursuant to Article 42 of the N.C.P.C. would not exist because the statute provides for jurisdiction in the domicile of a co-defendant with a related case and none of the defendants or Flash is domiciled in France. Watt Decl. ¶ 3; Lagarde Decl. ¶¶ 17, 18. In addition, according to plaintiffs' experts, Article 46 of the N.C.P.C. does not provide a basis for jurisdiction because the harm in this case, namely the crash, did not occur in France. Watt Decl. ¶ 4, Lagarde Decl. ¶¶ 23–24.

Defendants respond that Articles 331 and 333 of N.C.P.C. would allow plaintiffs to implead any third party necessary to the resolution of the case against Flash [8] and that the Cour de Cassation has permitted non-French plaintiffs to join their claims with French plaintiffs' claims pursuant to Article 14 of the French Civil Code. Reply at 6–7. Moreover, defendants argue that if the Court has any doubts about whether French courts will accept jurisdiction, the Court may condition its dismissal on the acceptance of jurisdiction by the French courts over the claims asserted in these cases. *Id.* at 10.

First, defendants' agreement as a condition of dismissal "to submit . . . to the jurisdiction of a French court in actions refiled by plaintiffs there and to toll any statute of limitations that might apply to such refiled actions for 120 days after dismissal by this Court" supports a finding that defendants are amenable to personal jurisdiction in France. *See* Declaration of Allison Kendrick in Support of Defendants' Motion to Dismiss on the Grounds of Forum Non Conveniens ("Kendrick Decl.") ¶ 8; Sackman Decl. ¶ 6; Declaration of Thomas E. Fennell in Support of Parker Hannifin's Joinder in the Joint Motion of Defendants the Boeing Company, et al., to Dismiss on the Grounds of Forum Non Conveniens ("Fennell Decl.") ¶ 5. As to whether French courts will assume jurisdiction over plaintiffs' claims, both parties submit evidence in support of their respective positions. *See, e.g.,* Justice Béraudo Decl. ¶¶ 7–17, Watt Decl. ¶¶ 2–12; *see also In re Air Crash Over the Taiwan Straits on May 25, 2002,* 331 F.Supp.2d 1176, 1182–83 (C.D.Cal.2004). It appears that there is a reasonable basis for concluding that French courts will be able to exercise jurisdiction over plaintiffs' claims. *See* Justice Béraudo Decl. ¶¶ 7–17, Delebecque Decl. ¶¶ 22–23. To the extent that the

---

Forum Non Conveniens at 1–3. Defendants also contend that Professor Watt's declaration is misleading in that it includes, *inter alia,* improper citations, and references to inapplicable statutes and overruled cases. *Id.* at 4–6. Because the Court does not rely on these portions of the declarations, the Court does not address these arguments.

8. An English translation of Articles 331 and 333 of the N.C.P.C., available at *www.legifrance.gouv.fr/html/frame_codes1.htm.* provides as follows:

*Article 331.*
A third party may be joined for the purpose of being cast in judgment by any party who

has the right to bring a claim against the former.
He may likewise be sued out by a party who has an interest in making the judgment common to them all.
The third party shall have to be called in good time to establish his defence.
*Article 333.*
The third party against whom proceedings have been issued shall be bound to proceed before the court seised of the original claim without being able to challenge the territorial jurisdiction of the court even by relying upon an argument of specific jurisdiction attributable to another forum.
N.C.P.C. Articles 331, 333.

possibility remains that French courts will refuse to assert jurisdiction over plaintiffs' claims, any order of dismissal based on *forum non conveniens* grounds will be conditioned on the French court's assumption of jurisdiction over plaintiffs' claims. *See Contact Lumber v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1450 (9th Cir.1990).

### (2) Adequacy of Forum

Defendants maintain that France is an adequate forum for this litigation. Plaintiffs do not appear to dispute that France would be an adequate forum once all necessary parties are subject to its jurisdiction.

### (a) Subject Matter and Remedies

■ "A foreign forum is adequate when it provides the plaintiff with a sufficient remedy for his wrong." *Dole*, 303 F.3d at 1118 (citation omitted). However, "[i]f the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice." *Piper*, 454 U.S. at 254, 102 S.Ct. 252.

Defendants argue that the plaintiffs in this case have already conceded that France is an adequate forum by filing their cases against Flash in France. Mot. at 11. Although plaintiffs assert that the action against Flash in France was involuntarily dismissed on February 22, 2005, Opp'n at 14, defendants maintain that the French action against Flash has been "temporarily halted" and "can be resumed at any time." Reply at 1. Moreover, defendants assert that France provides remedies for negligence and product liability claims and permits plaintiffs to recover losses on behalf of the deceased passengers as well as economic and non-economic damages on behalf of themselves as "indirect victims."

*Id.* at 12. Defendants have proffered expert testimony demonstrating that French law provides substantial remedies for product liability claims like those brought by plaintiffs. *See* Delebecque Decl. ¶¶ 25–26, 31. Although the parties do not agree that French substantive law necessarily governs plaintiffs' claims, plaintiffs do not argue that a French forum would refuse to recognize plaintiffs' claims or provide adequate remedies for plaintiffs.

### (b) Procedural Safeguards

Defendants contend that the judicial system in France would provide a fair and thorough proceeding and the opportunity to appeal to an intermediate as well as the highest court. *Id.* Defendants have proffered expert testimony demonstrating that French courts have a rigorous judicial system that seeks to promote fair proceedings and debate. *See* Delebecque Decl. ¶¶ 4–8; *see also Taiwan Straits*, 331 F.Supp.2d at 1186–87 (discussing adequacy of procedural safeguards). Plaintiffs do not dispute the adequacy of judicial procedure in France. Accordingly, potentially inadequate procedural safeguards do not counsel against litigation in France.

■ Because the Court concludes that an adequate alternative forum exists in France, the Court finds that defendants have satisfied the first prong of the *forum non conveniens* analysis. *See Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602 (10th Cir.1998), 606–08 (holding France is adequate alternative forum in litigation involving airplane crash), *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1429 (11th Cir.1996) (same), *In re Air Crash Off Long Island New York*, on July 17, 1996, 65 F.Supp.2d 207 (S.D.N.Y.1999) (holding that France is adequate alternative forum, although declining to dismiss on *forum non conveniens* grounds based on balance of public an private interest factors). The

Court next considers whether the public and private interest factors weigh in favor of dismissal on *forum non conveniens* grounds.

### B. Private Interest Factors

■ "Private interest factors include: ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and other problems that interfere with an expeditious trial." *Contact Lumber.*, 918 F.2d at 1451 (citing *Gulf Oil v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), *superseded by statute on other grounds as recognized in Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.*, 725 F.Supp. 317 (S.D.Miss.1989)).[9] Defendants argue that the private interest factors favor dismissal.

### (1) Ease of Access to Sources of Proof

Defendants contend that only a French court will have access to all of the necessary evidence, which is currently located in France, Egypt, and the United States. Mot. at 13. First, defendants maintain that nearly all of the evidence supporting plaintiffs' damages, including documents and witnesses establishing financial losses and witnesses with knowledge of the health and life expectancy of the numerous decedents, is presently located in France. *Id.* at 13. Second, defendants contend that documents regarding Flash Airlines, civilian aviation oversight, and the Egyptian MCA investigation, which are located in Egypt, would be available in France from Flash by compulsory process and from parties located in Egypt pursuant to

a bilateral convention permitting French courts to obtain evidence located in Egypt. *Id.* at 14–15. Defendants assert that, by contrast, Flash's evidence cannot be compelled in this Court and that evidence in Egypt will be difficult, if not impossible, to obtain because it is unlikely that an Egyptian court would enforce an international letter rogatory from this Court asking for assistance in obtaining evidence located in Egypt. *Id.* at 14. Defendants argue that if plaintiffs were to proceed in the French courts, they would have access to defendants' documents pursuant to defendants' agreement to produce them as a condition of dismissal. *Id.* at 15. Moreover, defendants contend that only a small portion of the necessary evidence is located in California, while most of the evidence in the United States is located outside of California. *Id.* at 15 n. 9.

Plaintiffs argue that France cannot rely on its bilateral treaties with Egypt to obtain evidence from Egypt because the Convention between the United States of America and Other Governments Respecting International Civil Aviation "controls every aspect of an aircraft accident investigation, including the sharing of information generated during the course of an investigation," and thus supersedes any subsequent conventions between France and Egypt. Opp'n at 19. Plaintiffs also contend that Egyptian authorities have not cooperated with French requests for information in the criminal investigation of the crash and are not likely to be more cooperative in the future. *Id.* at 19–21. Notwithstanding potential problems obtaining evidence from Egypt, plaintiffs maintain that all necessary evidence of liability is

**9.** The Ninth Circuit has also stated that these factors include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Lueck* at 1145 (citing *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839, *Contact Lumber*, 918 F.2d at 1449).

currently available in the United States, including engineering documents and data. *Id.* at 21. In particular, plaintiffs argue that "[w]hile parts of the wreckage [located in Egypt] are relevant to Plaintiffs' proof, a total wreckage inspection is not required." *Id.* at 21. As to the relevant parts of the wreckage, plaintiffs assert that the MCA has already relinquished custody of the aileron power control unit to NTSB and has demonstrated that they are likely to cooperate with the NTSB in the future. *Id.* at 21–22. Plaintiffs argue that damages evidence consists mainly of documents which are easily transportable and a few willing witnesses who will travel to California at plaintiffs' expense. *Id.* at 22. Finally, plaintiffs contend that French discovery rules would result in defendants being required to produce less evidence than would be required in the United States. *Id.* at 22.

Defendants respond that much of the critical evidence they need is not located in Egypt, but rather is under the control of Flash. Reply at 20. In addition, defendants assert that Egyptian authorities have at least partially complied with French requests for evidence and that evidence gathered by the MCA will be available pursuant to the Egypt–France treaty once the MCA's investigation of the crash is complete. *Id.*

Only one piece of the wreckage of Flight 604 is located in the United States.[10] Supp. Breuhaus Decl. ¶ 42. The evidence to be supplied by California-based ILFC appears minimal and easily transportable to France. Sackman Decl. ¶ 5(A) ("ILFC has approximately 600–700 pages of docu-ments relating to the accident aircraft. All of these documents are located in California. There are four to six ILFC current and former employees with relevant knowledge regarding the accident or the accident aircraft, most of whom are located in California with one in Alabama and one former employee in New York City."). Moreover, it appears that at least a substantial portion of defendants' evidence regarding aircraft design, manufacture, assembly, testing, certification, and customer support services is located outside California. Breuhaus Decl. ¶ 7(g); Declaration of Karl Pfitzer in Support of Defendants' Joint Motion to Dismiss on the Grounds of Forum Non Conveniens ("Pfitzer Decl.") ¶ 6(f). Even so, defendants have agreed to produce such evidence in any action before a French court. *See, e.g.,* Kendrick Decl. ¶ 8.

As to the evidence located outside the United States, the Court finds that such evidence is more easily accessible in France. As defendants note, most of the documents and witnesses concerning damages, such as the tax returns, pay stubs, employment records, health records, and family members of decedents are overwhelmingly located in France, where the majority of decedents resided. *See Taiwan Straits,* 331 F.Supp.2d at 1196 ("While the parties dispute the location of the relevant liability proof, there is no question that damages proof is overwhelmingly located in Taiwan. Given the number of decedents, the volume of this evidence is substantial."). In addition, it appears that it will be easier for all parties to obtain evidence from Flash in France

---

10. This portion of the wreckage is the aileron power control unit. Breuhaus Decl. ¶ 42. The parties dispute the significance of the aileron power control unit in the crash of Flight 604. *See, e.g.,* Breuhaus Decl. ¶¶ 39, 40, Declaration of A.D. Llorente in *Opposition to Defendants' Joint Motion for Dismissal* ("Llorente Decl.") ¶¶ 19, 20. However, the potential sig-nificance of the aileron power control unit does not alter the balance of factors concerning the appropriate forum. For this reason the Court also overrules as moot defendants' objections to the Llorente Decl. *See* Defendants' Objection to Plaintiffs' Evidence Submitted in Opposition to Motion to Dismiss at 9–14.

than in California, where Flash is likely beyond this Court's subpoena power. *See* Delebecque Decl. ¶¶ 9–10, 12–13, 32. Finally, although France and Egypt are parties to a bilateral treaty relating to judicial cooperation, Delebecque Decl. ¶¶ 12–14, the parties disagree about the extent of assistance that Egyptian officials will provide to French courts attempting to obtain evidence from Egypt. *Compare* Delebecque Decl. ¶¶ 12–14 *with* Declaration of Marc Chernet in Support of Plaintiffs' Opposition to Defendants' Joint Motion for Dismissal on Grounds of Forum Non Conveniens ("Chernet Decl."). Because the Court finds that this factor strongly favors dismissal, the relative ease by which the United States or France could obtain evidence from Egypt does not change the Court's conclusion regarding this factor. Given that a large volume of relevant evidence is either located in France now or can be made available there by agreement, while much of the evidence located in France would be difficult, if not impossible, to obtain in California, the Court finds that this factor favors dismissal.

### (2) Compulsory Process to Obtain the Attendance of Hostile Witnesses, and the Cost of Transporting Friendly Witnesses

Defendants contend that witnesses critical to this case are beyond the reach of this Court's compulsory processes because they are located in foreign countries. Mot. at 16. However, defendants contend that these witnesses would be available in France because they reside in France or have brought claims against Flash and its insurer, Al Chark, in France. *Id.* at 16, Kendrick Decl., Ex. A (complaint in

French action against Flash and Al Chark Insurance Company). Moreover, cooperation between France and Egypt pursuant to their bilateral convention would also likely result in important witnesses located in Egypt being available in France. Mot. at 16. As already discussed above, there appear to be a large number of damages witnesses located in France. Even if they were willing to testify voluntarily, the cost of their traveling to this district would be great. If these French witnesses were to refuse to testify, it is unlikely that this Court would be able to compel them to do so. Conversely, defendants have agreed to make witnesses and other evidence available in France as a condition to dismissal. Accordingly, the Court concludes that this factor weighs in favor of dismissal.

### (3) Other Problems that Interfere with an Expeditious Trial

Defendants argue that the fact that many of the plaintiffs are already pursuing an action against Flash and its insurer in France also weighs in favor of dismissal. Mot. at 17. Defendants contend that permitting concurrent actions to proceed in France and the United States would be inefficient and duplicative and may result in inconsistent results. *Id.* at 18–19. Defendants note that the Warsaw Convention prohibits plaintiffs from bringing their claims against Flash in the United States, but that plaintiffs' claims against the instant defendants can be brought in France. *Id.* Finally, defendants argue that the absence of Flash from the present actions creates the potential for incomplete relief, prejudice to defendants with respect to the allocation of liability, and conflicting results.[11] *Id.* at 19–20.

11. At oral argument, plaintiffs' counsel contended that Flash was essentially out of business and would not proffer a defense in the French action, and argued that the action in France against Flash should not play a role in the Court's consideration of this motion. Defendants disputed these contentions and asserted that Flash is represented by counsel and has appeared in the French action. In plaintiff's sur-reply, however, plaintiffs admit

■ Plaintiffs further argue that the parties' expectation that the litigation will proceed in California weighs in favor of denying defendants' motion. Opp'n at 23. A forum selection clause in the ILFC–Flash lease provides as follows:

> *Waiver.* LESSEE AND LESSOR HEREBY WAIVE THE RIGHT TO A TRIAL BY JURY. LESSEE AND LESSOR HEREBY IRREVOCABLY WAIVE ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THE LEASE BROUGHT IN ANY OF THE COURTS REFERRED TO IN ARTICLE 27.2, AND HEREBY FURTHER IRREVOCABLY WAIVE ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

Declaration of Susie Injijian in Support of Plaintiff's Opposition to Defendants' Joint Motion for Dismissal on Grounds of Forum Non Conveniens, Ex. 1 ¶ 27.5 (capitalization in original). Plaintiffs assert that ILFC and Flash agreed that California law governs their lease agreement and that the parties "selected ILFC's home district as the proper forum for disputes involving the leased aircraft, and clearly agreed that neither would challenge the contractually selected forum as inconvenient." *Id.* at 23, 24. Accordingly, plaintiffs contend that the Court must enforce this forum selection clause pursuant to *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Plaintiffs contend that they are entitled to rely upon the forum selection clause in the lease between ILFC and Flash because they are intended third party beneficiaries of the lease agreement.[12] *Id.* at 25–26.

Defendants respond that the lease between ILFC and Flash does not make plaintiffs third party beneficiaries, Reply at 22–25. More specifically, defendants argue that the insurance and aircraft maintenance provisions of the lease upon which plaintiffs rely to demonstrate that they are intended beneficiaries were not intended to be invoked by plaintiffs or other third parties. *Id.* at 21–22. Defendants point to Article 8.5 of the lease as demonstrating that the lease was not intended to apply to claims involving the condition of the subject aircraft. *Id.* at 23 (citing Kendrick Decl., Ex. H (lease) ("LESSEE agrees that LESSOR will not be liable to LESSEE, any sublessee or any Person, whether in contract or tort and however arising, for any cost, loss or damage (consequential or otherwise) arising out of the condition of the Aircraft, whether or not due in whole or in part to an act or omission or the active or passive negligence of LESSOR.")).

In addition, defendants argue that plaintiffs are not seeking to enforce any particular provision of the lease besides the forum selection clause and are not asserting

---

that "[c]ounsel for plaintiffs received a letter from the London solicitors for the Insurers and Reinsurers of Flash Airlines dated June 16, 2005, in which these solicitors represent ...that Flash has a 'primary layer' of $50 million of liability insurance and an 'excess layer' of $500 million. The solicitors also represented—for the first time—that they will accept service on behalf of Flash Airlines for claims brought by the relatives or dependents of non-Egyptian passengers." Sur–Reply at 2 n. 1.

**12.** For reasons discussed in connection with the public interest factor regarding the preference for having a forum apply a law with which it is familiar, plaintiffs argue that even if a French court were to hear this case, the application of French choice-of-law rules would result in further inconvenience and difficulty. Opp'n at 31.

claims arising out of or related to the lease. *Id.* at 23–24.

The Court concludes that the lease between ILFC and Flash does not weigh in favor of retaining the case. First, the forum selection clause does not govern the claims of plaintiffs against the defendants in these cases. The lease governs the obligations of ILFC and Flash with respect to the subject aircraft, not the liability of either of them to those passengers and crew aboard the subject aircraft. In fact, Article 8.5 of the lease explicitly provides that the it does not cover losses to anyone arising out of the condition of the aircraft. Accordingly, the Court finds that the claims asserted in these cases are not governed by the express terms of the forum selection clause.

Second, even if the Court were to conclude that these actions arise out of or are related to the lease, plaintiffs are not third party beneficiaries who are entitled to enforce all provisions of the lease, including the forum selection clause. Under California law, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ.Code § 1559. Plaintiffs are not third party beneficiaries of the forum selection clause, which was plainly not intended to benefit plaintiffs. *See Sessions Payroll Mgmt., Inc. v. Noble Constr. Co., Inc.,* 84 Cal. App.4th 671, 680, 101 Cal.Rptr.2d 127 ("As

to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler. Permitting a third party to enforce a covenant made solely to benefit others would lead to the anomaly of granting him a bonus after his receiving all intended benefits." (citations omitted)).

In support of its argument that plaintiffs are intended third party beneficiaries of the ILFC–Flash contract, plaintiffs rely on *James Stewart & Co. v. Law,* 149 Tex. 392, 233 S.W.2d 558 (1950). In *James Stewart,* both a worker who was injured at work by a subcontractor and his insurer sought damages for the worker's injuries from the contractor based on a contract between the worker's employer and the contractor. *James Stewart* at 395, 233 S.W.2d 558. The contract provided that the contractor must require its subcontractors to maintain certain insurance. *Id.* at 396, 233 S.W.2d 558. The Supreme Court of Texas held that even if the requirement that subcontractors maintain certain insurance was based on the employer's purely selfish motives, the worker and his insurer were nevertheless third party beneficiaries who were intended to receive the benefits of the employer-contractor contract, including insurance benefits from subcontractors. *Id.* at 398–99, 233 S.W.2d 558. *James Stewart* is distinguishable from the present case. Unlike the plaintiffs in *James Stewart,* plaintiffs are not seeking compensation or other benefits that would otherwise have been provided by the terms of the lease.[13] Because there currently is

---

13. Plaintiffs note that *James Stewart* was cited with approval by the California Court of Appeal in *Johnson v. Holmes Tuttle Lincoln–Mercury, Inc.,* 160 Cal.App.2d 290, 325 P.2d 193 (1958). Opp'n at 26. In *Johnson,* plaintiffs, who were injured in an automobile accident, sued the automobile dealer from whom the tortfeasor had purchased his automobile, seeking to recover on a judgment against the tortfeasor on the ground that plaintiffs were third party beneficiaries to "an oral agreement [by the automobile dealer] to procure public liability and property damage insur-

ance" for the tortfeasor. *Johnson* at 293, 325 P.2d 193. Citing, *inter alia, James Stewart,* the Court of Appeal upheld the jury's finding that plaintiffs were third party beneficiaries to the agreement between the automobile dealer and the tortfeasor whereby the automobile dealer agreed to procure third party liability insurance. *Johnson,* however, is distinguishable. While it treats plaintiffs' claims as those of third party beneficiaries, a careful reading suggests that the automobile dealer's liability arose by reason of California Insurance Code § 11580. The terms of that sec-

no pending dispute regarding the terms of the lease or the relationship between Flash and ILFC, Supp. Sackman Decl. ¶ 3, the Court concludes that plaintiffs are not entitled to enforce the forum selection clause of the lease.[14]

Notwithstanding arguments regarding the language of the forum selection clause or third party beneficiary status, plaintiffs further argue that pursuant to *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir.1988), their tort claims are subject to the forum selection clause because they are related to the lease in that they require interpretation of the terms of the lease, including maintenance requirements and Article 8.5. Opp'n at 26 n. 11, Sur–Reply at 4–5. Under *Manetti–Farrow*, "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti–Farrow* at 514 n. 5. Such participants may include third party beneficiaries. *See TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir.1990) (holding that third party beneficiaries to a contract may be restricted by forum selection clause), Judge William W. Schwarzer *et al.*, California Practice Guide: Federal

Civil Procedure Before Trial § 4:130 (The Rutter Group 2005). However, under *Manetti–Farrow*, "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti–Farrow* at 514. Even if the Court were to conclude that plaintiffs are "participants" who have standing to enforce the forum selection clause under *Manetti–Farrow*, plaintiffs' claims are still not subject to the forum selection clause. Especially in light of confirmation that Flash is sufficiently insured, *see* discussion *supra*, there is no need to interpret the lease to decide plaintiffs' product liability claims. The plain language of the maintenance provisions, coupled with Article 8.5 also demonstrate that maintenance provisions were for the protection of ILFC alone. In sum, the Court concludes that the forum selection clause contained in the ILFC–Flash lease does not weigh against dismissal.

▆▆ Finally, the Court concludes that the fact that Flash cannot be compelled to appear as a defendant in the United States is a substantial consideration weighing in favor of dismissal. In *Piper*, the Supreme

---

tion provided that the policy of insurance that the automobile dealer agreed to purchase was required to include a provision enabling the judgment creditor to sue the insurer directly. *Johnson* at 298, 325 P.2d 193 (citing portions of Cal. Ins.Code, including § 11580(b)(2), which states that certain insurance policies must include "[a] provision that whenever judgment is secured against the insured...in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recovery on the judgment."). As such, *Johnson* is readily distinguishable from the present actions.

14. At oral argument, plaintiffs suggested that Flash had failed to procure all insurance required by its lease with ILFC, thereby creat-

ing a potential claim by plaintiffs as third party beneficiaries against ILFC for ILFC's alleged failure to enforce Flash's obligation to obtain insurance. However, as noted in footnote 11, herein, plaintiffs now admit that they received confirmation that "Flash has a 'primary layer' of $50 million of liability insurance and an 'excess layer' of $500 million..." Sur–Reply at 2 n. 1 and attachment (letter to plaintiffs' counsel from Barlow Lyde & Gilbert). It does not appear that plaintiffs currently suggest that this insurance is insufficient pursuant to the terms of the ILFC–Flash lease, although they do request copies of these policies. Sur–Reply at 2 n. 1. As such, even if plaintiffs could somehow demonstrate that they are third party beneficiaries of the undertaking to provide insurance, it appears that no evidence supports the claim that such undertaking was breached.

Court addressed a similar situation in which potential third-party defendants could not be impleaded into an action in the United States, but could appear as defendants in a trial in Scotland. *Piper,* 454 U.S. at 258, 102 S.Ct. 252. The Court reasoned as follows:

> Joinder of the pilot's estate, Air Navigation, and McDonald is crucial to the presentation of petitioners' defense. If Piper and Hartzell can show that the accident was caused not by a design defect, but rather by the negligence of the pilot, the plane's owners, or the charter company, they will be relieved of all liability. It is true, of course, that if Hartzell and Piper were found liable after a trial in the United States, they could institute an action for indemnity or contribution against these parties in Scotland. It would be far more ·convenient, however, to resolve all claims in one trial.

*Piper,* at 259. Similarly, in this case, not only would an inability to compel Flash to appear hinder defendants' ability to present a complete case, but it would also be more convenient to resolve all claims involving defendants in litigation in France. Accordingly, because the lease between ILFC and Flash does not require the present actions to proceed in this Court and because Flash's absence from these actions would pose significant problems and inconvenience, the Court finds that this factor weighs in favor of dismissal.

### C. Public Interest Factors

■ "Public interest factors encompass court congestion, the local interest in resolving the controversy, and the preference for having a forum apply a law with which it is familiar." *Contact Lumber,* 918 F.2d at 1452; *see also Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839 ("Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and

the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.").

### (1) Court Congestion

■ In considering court congestion, "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may well be speedier in another court because of its less crowded docket." *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1337 (9th Cir.1984), *cited in Taiwan Straits,* 331 F.Supp.2d at 1203. Neither party appears to discuss this factor specifically. However, this Court has noted:

> The Central District of California...is one of the busiest districts in the country. In 2003, 14,720 cases were filed in the Central District. The median time from filing to disposition is 7.5 months. For civil cases proceeding to trial, however, the median time from filing to trial is 21.2 months.

*Taiwan Straits,* 331 F.Supp.2d at 1202. Further, defendants' expert states the following:

> The average length of proceedings before the *TGI,* from the time the summons is filed through the end of trial, varies from nine months to two years. Before the Court of Appeal, the average length of the proceedings is two years. Before the *Cour de Cassation,* the average length of proceedings is from two to three years. In any event, the length of the proceedings must be "reasonable" in accordance with article 6 § 1 of the *European Convention for the Protection of Human Rights and Fundamental Freedoms* dated November 4, 1950.

Delebecque Decl. ¶ 8. Based on the present record, the Court finds that the factor is neutral and does not favor dismissal.

## (2) Local Interest in Resolving the Controversy

Defendants argue that France has a compelling interest in this litigation for the following reasons: the crash at issue killed over 100 French residents; the subject aircraft was transporting French tourists on tour packages offered by French travel agencies; over 500 French claimants, including many of the plaintiffs in this case, are already involved in French court proceedings related to the crash; a criminal investigation into the crash has commenced in France; litigation involving the crash is already underway in France; the BEA has been involved in the investigation of the crash, including search and recovery efforts; the crash has been covered extensively in the French media; and French officials have been in contact with and assisted the crash victims' families. Mot. at 20–22. Defendants argue that California's interest in the litigation, in contrast, is extremely limited and consists solely of the fact that ILFC, a California corporation, leased the subject aircraft to Flash approximately two years before the crash. *Id.* at 22. Accordingly, defendants argue that litigating the case before this Court would "impose a considerable and unwarranted burden on this Court and on the citizens of this jurisdiction, whose tax dollars would have to support the expense of trying this case and whose time would be taken up by sitting as jurors." *Id.* at 23.

Plaintiffs argue that the United States has a interest in "judging the products of its own manufacturers against standards established and described under United States law," while French law favors "adjudicating cases in the forum of the defendant's domicile." Opp'n at 28–31.

Defendants respond that even if this case were to proceed in France, the United States' interests in promoting air safety are served by the services and involvement of the NTSB and FAA and will also be served by adjudication before French courts. Reply at 13.

The Court finds that France has a greater interest in hearing this case and thus concludes that this factor weighs in favor of dismissal. Of the 122 decedents whose deaths are the subject of the 57 consolidated cases, 120 were citizens or residents of France. Supp. Kendrick Decl. ¶ 4(f). In comparison, four United States citizens perished in the crash. Kendrick Decl. ¶ 5(f). The Court finds that France's interest in ensuring that the heirs and beneficiaries of the majority of those on Flight 604 are compensated and treated fairly is great. The United States has an interest in ensuring that products produced by United States companies in the United States are safe. However California's interest in these actions is minimal. A substantial portion of defendants' evidence regarding liability is located outside of California. Breuhaus Decl. ¶ 7(g); Pfitzer Decl. ¶ 6(f). In addition, California's interest in enforcing the terms of the lease between ILFC and Flash is minimal in light of the Court's rejection of plaintiffs' argument that they are third party beneficiaries of the lease.

## (3) Preference for Having a Forum Apply Law with Which It Is Familiar

Generally, the need to apply foreign law favors dismissal. *Piper,* 454 U.S. at 260, 102 S.Ct. 252 (citing *Gilbert* ). "This court has held that before dismissing a case for forum non conveniens, a district court must first make a choice of law determination." *Lueck* at 1148 (internal citations and quotation marks omitted). "However, the choice of law analysis is only determinative when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act." *Id.* "The purpose of a choice of law inquiry in

a forum non conveniens analysis is to determine if one of these statutes would apply." *Id., Taiwan Straits,* 331 F.Supp.2d at 1207.

Defendants argue that the Court need not engage in a complex choice of law analysis because such analysis is only determinative of *forum non conveniens* motions when " 'the case involves a United States statute requiring venue in the United States.' " Mot. at 24 (quoting *Lueck,* 236 F.3d at 1148). Because these actions would be governed by the Death on the High Seas Act, 46 U.S.C. app. §§ 761–767 ("DOHSA"), if the law of the United States were to apply at all, and DOHSA does not mandate venue in the United States, defendants argue that a choice of law analysis is not mandatory. *Id.*

Plaintiffs assert that it is likely that United States substantive law will apply whether or not the litigation occurs in France or this Court. Opp'n at 32. Plaintiffs contend that a French court hearing these cases and applying French choice of law rules would be compelled to apply the law of defendants' home jurisdiction, resulting in a foreign court being required to interpret the laws of several different states.[15] Opp'n at 30–31.

Defendants respond that plaintiffs' conclusions regarding applicable law are incorrect in that a choice of law analysis based on the law of France could result in the application of foreign law, most likely the law of Egypt, or possibly the law of France. Reply at 17.

The Court presently declines to undertake a lengthy choice of law analysis. However, insofar as it has been suggested that if United States law were to apply at all, DOHSA would govern the present claims, the Court agrees that DOHSA would appear to apply to the present claims and finds the discussion of choice of law in *Taiwan Straits* to be persuasive. *See Taiwan Straits,* 331 F.Supp.2d at 1206–11; 46 U.S.C. app. § 761 ("[W]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the

---

**15.** In particular, plaintiffs' expert opines "from the sole perspective of the allegedly greater convenience of the French forum" as follows:

> [I]n the present case, the French court would apply the 1973 Hague Convention on the law applicable to products liability, which is relevant to "the liability of manufacturers of a finished product or of a component part" (article 3). This Convention applies independently of any requirement of reciprocity (article 11). Under article 6, the governing law is that of the State of principal place of business of the person claimed to be liable (unless the claimant bases his claim upon the internal law of the State of the place of injury). That law applies in cases where articles 4 and 5 are inapplicable; these provisions designate the internal law respectively of the place of injury or the habitual residence of the person directly suffering damage, if various other contacts

are present in either case. In the present case, the contacts required by articles 4 and 5 are not present. In particular, the law of the victims' habitual residence is inapplicable pursuant to article 5 as neither the defendant's principal place of business, nor the place the product was acquired by the persons suffering damage directly, is in that State. The court would therefore apply the law of the manufacturer's principal place of business. Where, as in this case, the governing law is that of a federal state, and that state does not have uniform choice of law rules, then the court will generally apply the law of the territorial unit in which the defendant has its principal place of business.

Watt Decl. ¶¶ 24, 25. Defendants' experts opine that Egyptian law would more likely apply to litigation in France. *Id.* at 7; Béraudo Decl. ¶ 18; Supp. Delebecque Decl. ¶¶ 21, 23.

district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.").[16] In *Taiwan Straits*, after concluding that DOHSA does not mandate venue in the United States over cases arising out of the crash in Taiwan of a Boeing aircraft operated by China Airlines, the court considered whether admiralty law or federal common law would provide the appropriate choice of law rules under DOHSA.[17] *Taiwan Straits* at 1208–09. The court concluded that Taiwan law would apply to plaintiffs' claims under either admiralty choice of law rules or federal common law choice of law rules. *Id.* at 1211. Accordingly, the Court held that its lack of familiarity with Taiwianese law weighed in favor of dismissal. Similarly, in this case, in light of the Court's conclusion that the ILFC–Flash lease's forum selection clause does not mandate the application of California law, the possibility that DOHSA could apply, and the possibility that either French or Egyptian law could apply to all or part of this case, it appears that the French forum should be favored in the interests of justice. Therefore, because the Court would be compelled to apply foreign law, the Court finds that this factor weighs in favor of dismissal.

## III. CONCLUSION

■ For the reasons discussed herein, the Court GRANTS defendants' motion to dismiss on grounds of *forum non conveniens*.[18] The Court's dismissal is subject to the following conditions:

16. The Court does not definitively decide at this time whether DOHSA would be applicable.

17. As the *Taiwan Straits* court noted, the factors considered in applying admiralty law include the following: "(1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the defendant shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of the foreign forum; and (7) the law of the forum" as well as "the shipowner's base of operations." *Taiwan Straits* at 1209 (citing *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970)). In this case, it appears that all of these factors weigh in favor of the application of Egyptian or French law, but not California law. *Taiwan Straits* at 1209 ("Even if some of the *Lauritzen* factors implicated United States law, moreover, the fact that the law of the flag points to Taiwan is likely dispositive.").

Similarly, under federal common law analysis, foreign law would likely apply. Such analysis "presumes that the law of the place where the injury occurred applies . . . unless California has a more significant relationship to the crash and to the parties." *Taiwan Straits* at 1210 (citations omitted). To determine whether California has a more significant relationship, the Court must consider the following:

(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.

*Taiwan Straits* at 1210–11 (internal brackets omitted) (quoting *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 783 (9th Cir.1991)). Consideration of these factors does not demonstrate that California's interest is greater than Egypt's or possibly France's.

18. The Court has considered plaintiffs' Ex Parte Motion to Strike New Matter Submitted in Reply Papers Supporting Defendants' Pending Joint Motion to Dismiss on Grounds of *Forum Non Conveniens* and defendants' opposition thereto. Plaintiffs have failed to specify or cite the particular issues purportedly raised for the first time in the reply. In addition, it appears that the evidence sub-

(1) Defendants' agreement to

 (a) submit to the jurisdiction of a French court in actions refiled by plaintiffs there;

 (b) toll any statute of limitations that might apply to such refiled actions for 120 days after dismissal by this Court;

 (c) make available in such refiled actions in the courts of France any evidence and witnesses in their possession, custody, or control in the United States that the French courts properly deem discoverable and relevant to the resolution of any issue before them; and

 (d) pay any damages awarded by the French courts in such refiled actions, subject to any right to appeal; and

(2) A French court's acceptance of jurisdiction over the claims of all plaintiffs presently before this Court.

IT IS SO ORDERED.

mitted in support of the reply brief directly relates to the discussion of jurisdiction and foreign law set forth in the motion and opposition. The Court finds that defendants' reply brief and supporting materials do not raise new matters and should not be stricken. Accordingly, the Court denies plaintiffs' ex parte motion.